**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GARY CISER and CISER COMPUTER CONSULTING,** on behalf of themselves and all others similarly situated,<br><br>     **Plaintiffs,**<br><br>  -against-<br><br>**NESTLE WATERS NORTH AMERICA INC.,**<br><br>     **Defendant.** | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO *FED. R. CIV. P.* 9(B) AND 12(b)(6)**<br><br><br>**Civil Action No. 11-cv-5031(WJM)** |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NESTLE'S MOTION TO DISMISS COMPLAINT**</u>

Date: January 6, 2012

**SANFORD WITTELS & HEISLER, LLP**
440 West Street
Fort Lee, New Jersey 07024
Telephone: (201) 585-5288

1350 Avenue of Americas, 31 Fl
New York, NY 10019
Telephone: (646) 723-2947

Counsel for Plaintiff and Class

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................. 1

LEGAL ARGUMENT .............................................................................. 5

I.   PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS ..... 5

   A.   Under New Jersey Law, the Imposition of an Improper Debt
Constitutes an "Ascertainable Loss," Regardless of Payment ............... 6

   B.   The First Amended Complaint Alleges that Ciser Paid the  Late
Fees Which Are the Subject of this Action ............................................. 7

II.   PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO DISMISSAL
UNDER THE "VOLUNTARY PAYMENT" DOCTRINE ...................... 9

   A.   The Voluntary Payment Doctrine Does Not Govern New Jersey
Consumer Protection Actions as a Matter of Law .................................. 9

   B.   Application of the Voluntary Payment Doctrine Depends on Factual
Questions that Cannot Be Decided on a Rule 12(b)(6) Motion ............ 14

     1.   *Ciser Alleges that He  Paid Defendant Nestle's Unlawful Fees
Under Extortion or Duress* ................................................................. 15

     2.   *Ciser Alleges Payment to Nestle Under a Mistake of Fact* ......... 16

III.   THE FIRST CAUSE OF ACTION STATES A CLAIM UNDER
THE NJCFA AND SHOULD NOT BE DISMISSED ............................ 18

   A.   Nestle's Late Fees Are a Penalty Under the NJCFA ...................... 18

   B.   Plaintiffs State a Plausible Claim for Relief Under the NJCFA ..... 19

IV.   PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED UNDER
FED. R. CIV. P. 9(b) ............................................................................ 21

i

A.   Rule 9(b) is Not Applicable to Plaintiffs' Claims Because They Do Not "Sound in Fraud" .......................................................................... 21

B.   Even if Rule 9(b) Applies, Plaintiffs' Complaint Satisfies the Standard ................................................................................................ 25

V.   PLAINTIFFS' SECOND CAUSE OF ACTION STATES A CLAIM UNDER THE COMMON LAW .............................................................. 27

VI.   PLAINTIFFS' THIRD CAUSE OF ACTION STATES A CLAIM FOR UNJUST ENRICHMENT ................................................................ 30

**CONCLUSION** ........................................................................................ **32**

<u>**TABLE OF AUTHORITIES**</u>

<u>**PAGE**</u>

**Cases**

301 Dahlgren Ltd. v. Board of Supervisors, 240 Va. 200 (1990)....................................... 28

A-1 Advanced Moving & Storage, Inc. v. Norvergence, Inc., (In re Norvergence, Inc.),
424 B.R. 663 (Bankr. D.N.J. 2010) .............................................................................. 3, 23

Abel Construction Co. v. Seward, 188 Neb. 166 (1972) .................................................. 29

AFLAC, Inc v. Williams, 265 Ga. 351 (1994) ................................................................. 28

Arlandson v. Hartz Mt. Corp., 792 F. Supp. 2d 691 (D.N.J. 2011)................................. 24

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)............................................................... 7, 8, 19

Associates. Home Equity Services., Inc. v. Troup,
343 N.J. Super. 254 (App. Div. 2001) ...................................................................... 14, 23

AT&T Communs. of N.J., Inc. v. Verizon N.J., Inc.,
270 F.3d 162, 170 (3d Cir. 2001)...................................................................................... 6

Atlantic Aviation v. Provident Life and Accident Insurance Co.,
1989 Dist. LEXIS 10261 (D. Del. 1989) ......................................................................... 28

Beasley v. Wells Fargo Bank, N.A.,1 Cal Rptr. 2d 446 (Ct. App. 1991) ........................ 27

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).................................................. 7, 19

Benya v. Gamble, 321 S.E. 2d 57 (S.C. App. 1984)........................................................ 27

Block v. Longstreet,
2007 N.J.Super. Unpub. LEXIS 2827 (App. Div. Dec 24, 2007)..................................... 16

Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009) ............................................ passim

Brenner v. Little Red Schoolhouse, Ltd., 302 N.C. 207 (1981) ...................................... 27

Brokerage Concepts v. U.S. States Healthcare, 140 F.3d 494 (3d Cir. 1998)................. 15

Brown v. SBC Communs., Inc.,
2007 U.S. Dist. LEXIS 14790 (S.D. Ill. Mar. 1, 2007) .................................................... 12

C.W. Sommer & Co. v. Rockefeller, 311 F.3d 198 (3d Cir. 2002) .................................. 27

Camelot Music, Inc. v. Mars Reality & Improve. Co., 514 So. 2d 987 (Ala. 1987) ........ 28

Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596 (D.N.J. 2003)............. 14, 15, 16

Carnegie v. Household Int'l Inc., 376 F.3d 656, 661 (7th Cir. 2004).............................. 13

Coffman v. Olson & Co., P.C., 906 N.E.2d 201 (Ind. Ct. App. 2009) ............................ 28

Colby v. Bailey, 5 Haw. 152 (1884) ................................................................................ 28

Continental Trailways, Inc v. Director, Div. of Motor Vehicles, 102 N.J. 526 (1986).... 10

Council v. Hogan, 566 A.2d 1070 (D.C. App. 1989) ...................................................... 28

Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994) ............................................... 4, 6, 18, 22

Crown Linen Serv., Inc. v. Apple E. of Danbury, Inc.,
2008 WL 1971317 (Conn. Apr. 15, 2008)....................................................................... 27

D'Ercole Sales v. Fruehauf Corp., 206 N.J. Super. 11 (App. Div. 1985) ........................ 12

Dewey v. Volkswagen, 558 F. Supp. 2d 505 (D.N.J. 2008)............................................. 23

Dist. 1199P Health & Welfare Plan v. Janssen, L.P.,
784 F. Supp. 2d 508 (D.N.J. 2011) .................................................................................. 24

Essex Ins. Co. v. RMJC, Inc., 306 F. App'x 749 (3d Cir. 2009).................................... 17

Farris v. County of Camden, 61 F. Supp. 2d 307 (D.N.J. 1999) ............................... 15, 16

Fischer v. Schmeling, 520 N.W.2d 820 (N.D. 1994)....................................................... 28

Frank v. Jansen, 303 Minn. 86 (1975) ........................................................................... 28

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007)................................................. 25

FTC v. Millennium Telecard, Inc.,
2011 U.S. Dist. LEXIS 74951 (D.N.J. July 11, 2011)....................................... 12
Garcia v. Canan, 851 F. Supp. 327 (N.D. Ill. 1994) ................................... 19, 29
Garrett v. Coast & Southern Fed. Sav. & Loan Assn., 9 Cal. 3d 731 (1973) ................ 27
Gary Outdoor Advertising Co. v. Sun Lodge, Inc., 133 Ariz. 240 (1982) ...................... 27
Gershin v. Scherman, 685 N.E.2d 1125 (Ct. App. 1997) .................................... 28
Graves v. Cupic, 75 Idaho 451 (1954) .................................................... 28
Harmon v. Eggers, 699 S.W.2d 159 (Tenn. 1985) .......................................... 28
Highgate Association v. Merryfield, 157 Vt. 313 ( 1991) ................................... 27
Hill v. Galaxy Telecomm., 184 F.R.D. 82 (1999) ........................................... 15
Illingwroth v. Bushong, 297 Or. 675 (1984) ............................................... 28
In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) ...................... 27
In re Craftmatic Secs. Litig., 890 F.2d 628 (3d Cir. 1989)................................... 27
In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517 (D.N.J. 2004) ..................................... 30
In re Magnesium Oxide Antitrust Litig.,
2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011)....................................... 27
In re Mercedes-Benz Antitrust Litig., 157 F. Supp. 2d 355 (D.N.J. 2001)..................... 26
In re State Dentistry Board of Dentistry, 84 N.J. 582 (1980) ............................. 9
In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256 (3d Cir. 2006)..................... 3, 22
Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520 (App. Div. 2008) ............. 13, 23
Jessen v. Jessen, 871 P.2d 987 (Wyo. 1991) ........................................... 29
Kalenka v. Taylor, 896 P.2d 222 (Alaska 1995)............................................ 28
Katz v. Live Nation, Inc., 2010 U.S. Dist. LEXIS 60123 (D.N.J. June 17, 2010) ....... 3, 23
King's Choice Neckwear, Inc. v. FedEx Corp.,
2007 U.S. Dist. LEXIS 93843 (D.N.J. Dec. 20, 2007)....................................... 19, 27, 30
Kirtley v. Wadekar, 2006 U.S. Dist. LEXIS 60309 (D.N.J. Aug. 24, 2006)................... 24
Knight v. SmithKline Beecham Corp.,
2011 U.S. Dist. LEXIS 101926 (E.D. Pa. Sept. 7, 2011) .................................. 23
Koeing v. Schlitz Breweries, 126 Wis. 349 (1985) ........................................ 28
Kona Hawaiian Associates v. Pacific Group, 680 F. Supp. 1438 (D. Haw. 1988)........... 28
Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454 (D.N.J. 1986) ........................... 26
Kugler v. Romain, 58 N.J. 522 (1971) .................................................... 22
Kushan v. Strong, 39 N.M. 281 (1935) ................................................... 28
Kutzin v. Pirnie, 124 N.J. 500 (1991) .................................................... 30, 31
Lake Ridge Academy v. Carney, 613 N.E.2d 183 (Ohio 1993) ............................. 28
Lane v. Pfeifer, 568 S.W. 2d 212 (Ark. 1978).............................................. 28
Lee v. Carter-Reed Co., LLC, 203 N.J. 496 (2010)........................................ 13
Lombardo v. Deshote, 647 So. 2d 1086 (La. 1994)......................................... 28
Loomis v. Lange Fin. Corp., 109 Nev. 1121 (1993)......................................... 28
Lujan v. Defenders of Wildlife, 504 U.S. 555 (1991) ..................................... 6, 9
Man O War Restaurants v. Martin, 932 S.W.2d 366 (Ky 1996) ............................ 28
Marcinczyk v. State of New Jersey Police Training Com'n, 203 N.J. 586 (2010) ........... 13
Massey v. Love, 478 P.2d 948 (Okla. 1979) .............................................. 28
Maxey v. Glindmeyer, 379 So. 2d 297 (Miss. 1980)........................................ 28
Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.,
159 N.J. 484 (1999) ................................................................. 19, 21, 27, 29

Miller v. American Family Publishers, 284 N.J. Super. 67 (Ch. Div. 1995)...................... 6

Muhammad v. County Bank of Rehoboth Beach, Delaware, 189 N.J. 1 (2006).......... 5, 13

Neitzke v. Williams, 490 U.S. 319 (1989)................................................................... 20

New Jersey Hosp. Ass'n v. Fishman, 283 N.J. Super. 253 (App. Div. 1995) ................ 16

Nohe v. Roblyn Development Corp., 296 N.J. Super. 172 (App. Div. 1997) ................. 31

Norman v. Durham, 380 S.W.2d 296 (Mo. 1964) ........................................................ 27

Pacheo v. Scoblinko, 532 A.2d 1036 (Me. 1987) ........................................................ 28

Pacholec v. Home Depot USA, Inc.,
2006 U.S. Dist. LEXIS 68976 (D.N.J. Sept. 25, 2006) ................................................ 26

Padilla v. Price Toyota, 2006 U.S. Dist. LEXIS 45506 (D. N.J. June 26, 2006) ............ 20

Palisades Properties, Inc. v. Brunetti, 44 NJ 117 (1965) ............................................. 30

Payne v. Fujifilm USA, Inc., 2007 U.S. Dist. LEXIS 94765 (D.N.J. Dec. 28, 2007)...... 23

Phillips v Phillips, 820 S.W.2d 785 (Tex. 1991) ........................................................ 28

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)........................................ 8

Porter v. Property Damage Control Group, Inc.,
2007 U.S. Dist. LEXIS 74004 (E.D.N.Y. Sept. 28, 2007).............................................. 23

Ramon v. Budget Rent-A-Car Sys.,
2006 U.S. Dist. Ct. Pleadings 950428 (D.N.J. Apr. 21, 2006) ....................................... 25

Ramon v. Budget Rent-A-Car Sys.,
2007 U.S. Dist. LEXIS 11665 (D.N.J. Feb. 20, 2007) ................................................. 25

Real v. Radir Wheels, Inc., 198 N.J. 511 (2009) ................................................. 1, 13, 18

Rickenbach v. Wells Fargo Bank, N.A.,
635 F. Supp. 2d 389  (D.N.J. 2009) ................................................... 11, 15, 16, 18

Rohauer v. Little, 736 P.2d 403 (Col. 1987).............................................................. 28

Rohlin Construction Co. v. Hintoy, 476 S.W.2d 78 (Iowa 1991) ................................... 28

Scott v. Fairbanks Capital Corp., 284 F. Supp. 2d 880  (S.D. Ohio 2003)...................... 12

Seville Industrial Machinery Corp. v. Southmost Machinery. Corp.,
742 F.2d 786 (3d Cir. 1984)..................................................................................... 25

Shallow Brook Ass'n v. Dube, 135 N.H. 40 (1991)........................................................ 28

Shinn v. Champion Mortg. Co., 2010 U.S. Dist. LEXIS 9944 (D.N.J. Feb. 5, 2010)...... 17

Simonson v. Hertz Corp., 2011 U.S. Dist. LEXIS 32755 (D.N.J. Mar. 28, 2011)........... 18

Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84 (D.N.J. 2011) ................................. 23

Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575 (N.J. 1997)................................... 29

Soto v. Quicken Loans, Inc., 2010 U.S. Dist. LEXIS 131913 (D.N.J. Dec. 14, 2010) .... 23

SP Terrace, L.P. v. Meritage Homes of Texas, LLC,
334 S.W.3d 275 (Tex. App. 2010)............................................................................... 27

State v. Hudson Furniture Co., 165 N.J. Super. 516 (App.Div. 1979) ............................ 22

Story v. City of Bozeman, 259 Mont. 207 (1993) .......................................................... 28

Taylor v. Sandiford, 20 U.S. 13 (1822) ....................................................................... 27

Transocean Enter., Inc. v. Ingalls Shipbuilding, Inc.,
33 So. 3d 459, 468 (Miss. 2010), reh'g denied (May 13, 2010), cert. denied, 131 S. Ct.
473 (2010)................................................................................................................ 28

Trump Hotels & Casino Resorts v. Mirage Resorts, 140 F. 3d 478 (3d Cir. 1998) ......... 20

United States School District 315 v. DeWerff, 6 Kan. App. 2d 77 (1981)...................... 28

Van Es v. Honeyleaf Properties, Inc., 253 N.J. Super. 566 (App. Div. 1992)................. 31

Walter Implement, Inc., v. Focht, 107 Wash 553 (1987) ............................................ 28

Wanaque Borough Sewerage Auth. v. Twp. Of W Milford,
677 A.2d 747 (N.J. 1996).................................................................. 30

Wandler v. Lewis, 1997 S.D. LEXIS 98 (July 23, 1997) .............................. 28

Warth v. Seldin, 422 U.S. 490 (1975)..................................................... 20

Whelling Clinic v. Van Pelt, 192 W. Va. 620 (1994) .................................. 27

Wilson v. Amerada Hess Corp., 773 A.2d 1121 ( N.J. 2001)......................... 29

Woodhaven Apartments v. Washington, 942 P.2d 918 (Utah 1997)................ 28

Worley v. McCarty, 354 Mich. 599 (1958) .............................................. 28

Zito v. Goaude, 122 R.I. 886 (1979)....................................................... 28

## Statutes

15 U.S.C. § 53(b) ............................................................................ 12

15 U.S.C. § 1692a ........................................................................... 12

N.J. S. § 56:8-19 ............................................................................... 6

N.J.S.A. § 56:8-1............................................................................ passim

N.J.S.A. 56:8-2................................................................................ 18, 22

## Rules

Fed. R. Civ. P. 12(b)(6).................................................................... 19

FED. R. CIV. P. 8(a)(2) ...................................................................... 7

Fed. R. Civ. P. 9(b) ........................................................................ passim

## Other Authorities

370-341 Ontario Ltd. v. Mikhalin,
1996 O.T.C. LEXIS 3913 (Ontario Court of Justices 1996) ........................... 29

General Finance Acceptance Ltd. v. Melrose,
1 N.Z.L.P.R. 465 (High Court Auckland 1987)......................................... 29

Hart Ltd v. Mitchell,
1996 S.C.L.P.R. 68 (Sheriff Court, Glasgow, Scotland Oct. 30, 1995) ............ 29

Lordsvale v. Bank of Zambia, 30 E.R. 165 (Queens' Bench 1996) ................. 29

Schiesser International v. Gallager, 106 I.L.T.R. 22 (Ireland 1971) ............... 29

## Treatises

Dobbs Law of Remedies, § 4.1, p. 553 (West. Pub. Co. 1993) ........................ 32

## PRELIMINARY STATEMENT

The New Jersey Consumer Fraud Act ("NJCFA," "CFA," or the "Act") "represents a legislative broadside against unsavory commercial practices." Real v. Radir Wheels, Inc., 198 N.J. 511, 514 (2009). Plaintiffs have alleged a plausible claim for relief under the NJCFA and similar common law protections and must be allowed to proceed to discovery.

In January 2009, Defendant Nestle Waters North America Inc. ("Nestle Waters," "Nestle," or "the Company") assessed a virtually 50 percent late fee upon Mr. Gary Ciser ("Ciser") and Ciser Computer Consulting ("CCC")(collectively "Plaintiffs"), when it charged a $15 late fee on an outstanding bill of $31.09 for bottled water. Nestle levied similarly exorbitant late-payment penalties on Mr. Ciser numerous times between 2006 and 2009. And Mr. Ciser was not the only target: Thousands of other customers throughout the state of New Jersey and nationwide were victimized by Nestle's punitive late fees. The Court should deny Defendant Nestle Water's motion to dismiss under Rule 4:6-2(e), because the Company has failed to show that this class action is one of those exceedingly rare instances where a suit should be dismissed on the face of the complaint.

Plaintiff Ciser alleges that Nestle imposes an illegal late-fee penalty on its customers, which: (a) violates the NJCFA, N.J.S.A. § 56:8-1, et seq.;

(b) violates the established common law prohibition of contractual penalties; and (c) unjustly enriches the Company at its customers' expense. (Plaintiffs' First Amended Complaint; Doc. No. 11).

In a nutshell, Plaintiffs claim that Defendant Nestle operates a long-standing, uniform policy of charging a late fee of up to $20 on overdue payments, regardless of how much is owed or how many days have elapsed. Nestle's website declares (in conflict with the policy on its invoices) that the Company's late fee is "the greater of (i) a late fee not to exceed $20 per month or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid." This fee bears no reasonable relationship to the anticipated or actual costs Nestle incurs from a customer's untimely payment, and exceeds the customary rate in the bottled water industry or in similar delivery-type industries. Relying on Defendant's good faith, Plaintiff Ciser had no reason to suspect in 2006-2009 that the Company's late charges were not reasonably related to Nestle's actual and anticipated costs attributed to late payment. Ciser felt compelled to pay his entire bills, including the late fees. By charging Ciser with an unconscionably high late-payment penalty, Defendant Nestle has violated both the NJCFA and the common law. The NJCFA entails a broad mandate for stamping out unsavory commercial practices, including all commercial practices defined

2

as "unconscionable." Under existing case law, Nestle's exorbitant late-payment penalty constitutes an unconscionable practice under the Act. Contrary to Defendant's assertions, Ciser is not required to meet a heightened pleading standard under Fed. R. Civ. P. 9(b) because his claim does not "sound in fraud." See, e.g., In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006); Katz v. Live Nation, Inc., 2010 U.S. Dist. LEXIS 60123, at *13-14 (D.N.J. June 17, 2010); Advanced Moving & Storage, Inc. v. Norvergence, Inc., 424 B.R. 663, 692-94 (Bankr. D.N.J. 2010).

In addition to Ciser's claim under the NJCFA, the common law allows for recovery where contractual late fees exceed reasonable compensation and instead serve as penalties. Ciser also may bring a claim for restitutionary damages under a theory of unjust enrichment. If Nestle uses its late fee charges not to recoup its bona fide costs, but rather to fatten its profits at the expense of loyal customers, then the Court can rightly order the Company to disgorge these ill-gotten gains.

Further, Ciser's claims are not barred by a lack of standing or by operation of the voluntary payment doctrine. Under New Jersey law, the imposition of an improper debt is an "ascertainable loss" that gives him standing under the NJCFA. Thus, any plaintiff who has been improperly

billed has suffered the requisite harm. E.g. Cox v. Sears Roebuck & Co., 138 N.J. 2, 23 (1994). Even if Ciser needed to have paid his bills to have suffered an ascertainable loss, any common-sense reading of his complaint shows that he paid the fees. Nestle's alternative construction is cramped and disingenuous.

Nestle's invocation of the voluntary payment doctrine — the principle that a party cannot recover fees he voluntarily paid — is also unavailing. No New Jersey court has applied the voluntary payment rule in the context of NJCFA claims or low-value consumer class actions, and extension of the doctrine to this area would be inappropriate in light of the New Jersey Supreme Court's decision in Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009), and similar New Jersey Supreme Court precedents. In Bosland, the Court held that the NJCFA did not require a pre-suit demand for a refund of alleged overcharges. The Court admonished that the Act's broad remedial purposes are not to be frustrated by a "crabbed" construction or by the imposition of unnecessary obstacles not contained within the text of the statute. Id. at 556 (internal citations omitted). These principles hold particularly true in class cases, which the Court has repeatedly recognized are critical to vindicating the substantive rights of the consumer and preventing the effective exculpation of corporate wrongdoers. See, e.g.,

Muhammad v. County Bank of Rehoboth Beach, Delaware, 189 N.J. 1 (2006).

Even if the voluntary payment rule theoretically governs Plaintiffs' claims, whether to actually apply it raises factual questions inappropriate for a motion to dismiss. Ciser alleges that he paid the fees in question under duress or a mistake of fact and these circumstances negate any voluntariness on his part. Without class-based discovery, Ciser has no way of knowing whether Nestle's fees reflect the actual cost of collecting his account.

In sum, the Plaintiffs allege that Nestle has imposed on Ciser, as well as the proposed class members, an exorbitant late-payment penalty that far exceeds the reasonable costs of collection. In so doing, Nestle violated the New Jersey Consumer Fraud Act (Count I); breached the common law related to the imposition of contractual penalties (Count II); and Plaintiffs are entitled to restitution to prevent unjust enrichment (Count III). These claims require merits-based discovery and involve disputed issues of fact that cannot be resolved on a motion to dismiss.

## LEGAL ARGUMENT

## I. PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS

Defendant Nestle argues that Ciser lacks standing to bring his claim under Article III of the Constitution, which requires a plaintiff to have

5

suffered an injury in fact. See AT&T Comms. of N.J., Inc. v. Verizon N.J.
Inc., 270 F.3d 162, 170 (3d Cir. 2001)(quoting Lujan v. Defenders of
Wildlife, 504 U.S. 555, 560-61 (1991)). This defense fails because Ciser
does clearly allege that he paid the late fees at issue in this action,
notwithstanding Nestle's absurdly strained and indefensible misreading of
Plaintiffs' Amended Complaint. However, even if this reading were
warranted, payment of the fees is immaterial under governing New Jersey
law. Nestle's imposition of an unlawful debt is in and of itself an
"ascertainable loss" entitling Ciser to recovery under the NJCFA.

### A. Under New Jersey Law, the Imposition of an Improper Debt Constitutes an "Ascertainable Loss," Regardless of Payment

The NJCFA prescribes that "any person who suffers any ascertainable
loss of moneys or property as a result of the use or employment by another
person of any method, act, or practice declared unlawful under this act may
bring an action in any court of competent jurisdiction." N.J. Stat. Ann. §
56:8-19.  In Cox v. Sears Roebuck & Co., 138 N.J. 2, 23 (1994), the New
Jersey Supreme Court ruled that the imposition an improper debt or lien
constitutes an ascertainable loss under the NJCFA because the consumer is
not obligated to pay a debt arising out of conduct that violates the Act. See
also, e.g., Miller v. American Family Publishers, 284 N.J. Super. 67, 90 (Ch.
Div. 1995). In his First Amended Complaint, Ciser clearly alleges that

Nestle imposed an unlawful debt upon him. Ciser asserts that "Nestle Waters charged Mr. Ciser a $15 late fee on multiple occasions between 2006 and 2009. On Mr. Ciser's January 2009 bill, Defendant charged virtually a 50 percent late fee; i.e., $15 on the $31.05 monthly charges owed."   (First Amended Complaint, ¶ 14). In addition, Ciser asserts he "was billed an exorbitant late charge per month.…" (First Amended Complaint, ¶ 23). Ciser thus alleges that he suffered an ascertainable loss that gives him standing under the NJCFA.

### B. The First Amended Complaint Alleges that Ciser Paid the Late Fees Which Are the Subject of this Action

Assuming arguendo that Ciser needed to pay Nestle's unlawful late fees to have suffered an injury in fact, Ciser clearly alleges that he paid the late fees challenged in this action.

The adequacy of pleadings is governed by FED. R. CIV. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A court should deny a motion to dismiss if a complaint states "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard simply "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Further, in considering a motion to dismiss, the Court must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, *under any reasonable reading of the complaint, the plaintiff may be entitled to relief*." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (emphasis added; internal citation omitted). As the Supreme Court noted in <u>Iqbal</u>, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era" and requires judges to conduct a "context-specific" analysis applying both "judicial experience and common sense." 129 S. Ct. at 1950.

The First Amended Complaint unmistakably alleges that Ciser paid Defendant Nestle's unreasonable late fees. Ciser alleges that "Mr. Ciser and his wife … personally pay the Nestle Waters' invoices." (First Amended Complaint, ¶10). Ciser further alleges that "Relying on Defendant's good faith, Ciser had no reason to believe in 2006-2009 that the company's late charges were not reasonably related to Nestle's actual and anticipated costs attributed to late payment. **Ciser felt compelled to pay his entire bills, including the late fees**." (First Amended Complaint, ¶ 18). Nestle's attempt to create a standing defense by ignoring the substance of the Complaint is doomed by these specific allegations.

8

Nestle's reliance on <u>Lujan</u> is misplaced.   Unlike in <u>Lujan</u>, the behavior central to Ciser's Complaint clearly *does* affect him in a personal and individual way: It is Ciser's own pocketbook and credit-rating that are at stake.   <u>Cf.</u> <u>Lujan</u>, 504 U.S. at 561. Ciser alleges that he paid, and was harmed by, Nestle's unjustifiable late fees.

## II.    PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO DISMISSAL UNDER THE "VOLUNTARY PAYMENT" DOCTRINE

### A. The Voluntary Payment Doctrine Does Not Apply to New Jersey Consumer Protection Actions as a Matter of Law

The voluntary payment doctrine constitutes an exception to ordinary common law principles requiring restitution to prevent unjust enrichment, and provides that "where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on demand which is not enforceable against him, he cannot recover it back." <u>In re State Dentistry Bd. Fees</u>, 84 N.J. 582, 587-88 (1980). No New Jersey case has applied the doctrine in the context of low-value consumer class actions, and it is unlikely a New Jersey court would do so in light of the New Jersey Supreme Court's decision in <u>Bosland</u> and statements in numerous other cases.

Under modern New Jersey law, the voluntary payment doctrine has been applied primarily in the context of taxes, licensing fees, and similar assessments paid to public authorities. <u>See</u>, <u>e.g.</u>, <u>Cont'l Trailways, Inc v.</u>

Director, Div. of Motor Vehicles, 102 N.J. 526, 548-550 (1986) (noting that "[p]ublic policy discourages suits for the refund of taxes erroneously paid or illegally collected"). The voluntary payment doctrine is an exception to the equitable rule permitting a refund where the retention of unlawfully collected funds would constitute unjust enrichment. Nestle has not identified a New Jersey case finding the doctrine applicable in the context of class actions or consumer fraud. To the contrary, recent case law strongly supports the inapplicability of the voluntary payment rule to this context.

First, the New Jersey Supreme Court, overturning a motion to dismiss in Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009), held that the NJCFA did not require a pre-suit demand for a refund and thus permitted a class of car buyers to recover under the NJCFA for overcharges they had paid on car registration fees. Writing for a unanimous Court, Justice Hoens highlighted the public policy rationale underlying both the class action mechanism and the NJCFA:

> When confronted, as we are here, with a plaintiff who asserts that she was the victim of an overcharge which itself is small in amount, and who seeks recovery for herself and on behalf of numerous others with "nominal" claims, we cannot overlook the reality that, without the remedy that the NJCFA affords, all of those wrongs might go unvindicated. See Local 68, supra, 192 N.J. at 382-85, 929 A.2d 1076. As with our view of the rationale that underlies the class action mechanism, ibid.; see Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 115, 922 A.2d 710 (2007) (explaining significance of availability of class actions in context of nominal damages), we see in the NJCFA an

underlying public policy rationale that gives no support to the
suggestion that a pre-suit demand for a refund is required.

Id. at 561.  The Court admonished: "Indeed, we see in defendant's arguments
an effort to import into the CFA obstacles that would impede access to the
broad remedial protections for consumers that our Legislature so obviously
intended to create." Id. at 559-60.

Following Bosland, a New Jersey District court in Rickenbach v.
Wells Fargo Bank, N.A., 635 F. Supp. 2d 389 (D.N.J. 2009), declined to
dismiss, under the voluntary payment rule, borrowers' claims of excessive
mortgage processing fees violative of the NJCFA and other state law. This
holding rested on the Court's inability to determine whether payment of the
fees occurred under mistake of fact, an exception to the volunteer rule. The
Court also observed, following Bosland, that the NJCFA "appears to conflict
with the common law voluntary payment rule, for the NJCFA permits suit
based solely on regulatory violations, even in the absence of fraud or
duress." Id. at 395. In a similar vein, the U.S. District Court for the Southern
District of Illinois has expressed "some skepticism about the applicability of
the voluntary payment rule" to claims brought under the Illinois Consumer
Fraud Act, due to the fact that the act is "remedial legislation" that is
"construed broadly to effect its purpose" of eradicating "all forms of
deceptive and unfair business practices." Brown v. SBC Communs., Inc.,

11

2007 U.S. Dist. LEXIS 14790, at *29 (S.D. Ill. Mar. 1, 2007).  The <u>Brown</u> court also noted that there is authority for the view that remedial legislation, such as the act, is not subject to common-law defenses. <u>Id</u>. at *29 n.3.

Courts also have refused to apply the voluntary payment doctrine to claims brought under federal statutes that, like the NJCFA, were designed to protect consumers. <u>See</u> <u>FTC v. Millennium Telecard, Inc.</u>, 2011 U.S. Dist. LEXIS 74951, at *13-14 (D.N.J. July 11, 2011)(declining to apply the voluntary payment rule to actions brought under the Federal Trade Commission Act (FTCA), 15 U.S.C. § 53(b), which has a "primary purpose" of "protect[ing] the consumer public"); <u>Scott v. Fairbanks Capital Corp.</u>, 284 F. Supp. 2d 880, 895 (S.D. Ohio 2003) (noting that the voluntary payment doctrine "appears to contradict the plain language" of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a et seq.). The FTCA in particular is a model for and closely analogous to state consumer protection laws such as the NJCFA. <u>See</u> <u>D'Ercole Sales v. Fruehauf Corp.</u>, 206 N.J. Super. 11, 29-30 (App.Div. 1985).

Moreover, the inapplicability of the voluntary payment rule to the consumer protection context accords with the New Jersey Supreme Court's disdain of maneuvers that effectively amount to "exculpatory waivers," which are "void as against public policy." <u>Muhammad v. County Bank of</u>

Rehoboth Beach, Delaware, 189 N.J. 1, 19 (2006). In Muhammad, the Court refused to enforce a class-action waiver in an arbitration agreement when doing so would have deprived plaintiff of an available mechanism to vindicate her consumer rights. See also, e.g., Marcinczyk v. State of New Jersey Police Training Com'n, 203 N.J. 586, 598-99 (N.J. 2010)(refusing to enforce exculpatory clause and reiterating their abhorrence under New Jersey law); Lee v. Carter-Reed Co., LLC, 203 N.J. 496 (2010) (reversing denial of class certification in NJCFA case; highlighting importance of class action mechanism in enforcing substantive rights). As the Seventh Circuit recognized in Carnegie v. Household Int'l Inc., 376 F.3d 656 (7th Cir. 2004): "The realistic alternative to a class action is not 17 million individual suits but zero individual suits, as only a lunatic, or a fanatic sues for $30." Such public policy concerns would certainly govern the scope and applicability of the voluntary payment rule here. It strains logic to conclude that the New Jersey Supreme Court would allow the voluntary payment doctrine to eviscerate the NJCFA, given Muhammad and existing case law emphasizing the Act's broad sweep and remedial purposes. See, e.g., Bosland, supra at 553-55; Real v. Radir Wheels, Inc., 198 N.J. 511, 514 (2009); Jefferson Loan Co., Inc. v. Session, 938 A.2d 169, 178 (N.J. Sup. Ct. App. Div. 2008); Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J.

Super. 254, 278 (App. Div. 2001). Such courts have emphasized that the NJCFA's purposes are not to be frustrated by a "crabbed" interpretation or by importing obstacles not contained within the Act itself. The voluntary payment doctrine, just as a class waiver, should not be applied to trump the strong public policies embodied in the NJCFA and insulate Nestle from liability for its mass wrongdoing.

### B. Application of the Voluntary Payment Doctrine Depends on Factual Questions that Cannot Be Decided on a Rule 12(b)(6) Motion

Even if the voluntary payment rule theoretically governs Ciser's action, factual questions prevent its application at the pleading stage.

As the court held in <u>Carducci v. Aetna U.S. Healthcare</u>, 247 F. Supp. 2d 596, 619 (D.N.J. 2003) (emphasis added):

> The voluntary payment doctrine, thus, only prevents restitution of amounts previously paid if (1) the payment was voluntarily made, (2) the payor was not under any mistake of fact, and (3) the circumstances of the payment were proper. **All are factual questions.**

These considerations preclude dismissal. Indeed, nothing in the Complaint establishes that Plaintiff Ciser "voluntarily" paid the assessed late fees. To the contrary, Ciser's allegations raise important factual issues, and bar application of the doctrine as a matter of law. Ciser alleges that "Relying on Defendant's good faith, Ciser had no reason to believe in 2006-2009 that the company's late charges were not reasonably related to Nestle's actual and

14

anticipated costs attributed to late payment. Ciser felt compelled to pay his entire bills, including the late fees." (First Amended Complaint, ¶ 18).[1]

## 1. Ciser Alleges that He Paid Defendant Nestle's Unlawful Fees Under Extortion or Duress

Under New Jersey law, a payment is not voluntary when the plaintiff believed it to be invalid but paid it anyway in order to continue a service or avoid other undue consequences. Carducci, 247 F. Supp. 2d. at 620; Rickenbach, 635 F. Supp.2d at 395. See also Farris v. Cty. of Camden, 61 F. Supp. 2d 307, 336 (D.N.J. 1999) ("economic duress" centers on whether one party wrongfully exerted pressure to get the other "to accede to the demand, i.e., to do what he otherwise would not have done.")(internal citation omitted). cf. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 522-524 (3d Cir. 1998) (definition of "extortion" under the Federal Hobbs Act includes the application of economic leverage to obtain property, to which one is not lawfully entitled, by the other party's consent). In this case, Plaintiff's refusal to pay the late fee would have entailed the severance of Nestle's water delivery service and the potential destruction of Ciser's

---

[1] Just as the voluntary payment doctrine is no bar to Ciser's individual claims, federal courts have held that the voluntary payment defense presents no bar to class certification. See, e.g., Kings Choice Neckwear, Inc. v. FedEx Corp., 2009 U.S. Dist. LEXIS 18756, at *7-8 (D.N.J. Mar. 10, 2009); Pro v. Hertz Equip. Rental Corp., 2008 U.S. Dist. LEXIS 100181 (D.N.J. Dec. 11, 2008); Hill v. Galaxy Telecom L.P., 184 F.R.D. 82, 87 (N.D. Miss. 1999).

credit.

Nestle's imposition of the late fee provided Ciser a Hobson's choice of either paying $15 or suffering disproportionate harms. Nestle's conduct in this case could be fairly held to involve duress, which renders the payment involuntary.  See Block v. Longstreet, 2007 WL 4472122, at *7 (N.J. App. Div. 2007) (recognizing that fear of damage to one's credit rating can contribute to duress).

Courts have held that determinations of economic duress are highly fact-dependent and cannot be decided at this premature juncture. This District has previously stated that "economic duress" under New Jersey law is "essentially subjective" and requires fact-specific analysis.  Farris, 61 F. Supp. 2d at 337; see also Carducci, 247 F. Supp. 2d at 620; Rickenbach, 635 F. Supp. 2d at 395. Whether or not Ciser's payment was made under extortion or duress invokes factual questions, including his subjective impressions as the payor. Application of the voluntary payment rule is unsuitable even for summary judgment, much less a motion to dismiss.

## 2. Ciser Alleges Payment to Nestle Under a Mistake of Fact

In the New Jersey state court decision in N.J. Hosp. Ass'n v. Fishman, 283 N.J. Super. 253, 266-67 (App. Div. 1995), the court set out what constitutes a mistake of fact under the voluntary payment rule:

> Generally, a mistake of fact . . . is such error or want of knowledge as to a fact, past or present, or such belief in the past or present existence as a fact of that which never existed, or such real and honest forgetfulness of a fact once known, as that a true recollection or knowledge of the fact, or of its existence or nonexistence, would have caused the payor to refrain from making the payment.

In contrast, a "mistake of law"— the classic case for application of the volunteer rule:

> is a mistake as to the legal consequences of an assumed state of facts, which occurs when a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect. **There is no payment under a mistake of law where the law is dependent on the facts and the facts are in dispute**.

Id. (emphasis added). See also Essex Ins. Co. v. RMJC, Inc., 306 F. App'x 749, 755 (3d Cir. 2009) (under similar Pennsylvania law, voluntary payment doctrine inapplicable when payment is made "without full knowledge of the facts" rather than under a mistake of "pure law").

Here, Plaintiff Ciser believes the $15 fee to be excessive and potentially unlawful, but he has no way of definitively knowing until class-based discovery that Defendant's late fees were not based upon the actual costs of collecting a customer's account. It is impossible for this Court to conclude from Ciser's complaint that he paid the late fee voluntarily with full knowledge of the facts. See, e.g., Shinn v. Champion Mortg. Co., 2010 U.S. Dist. LEXIS 9944, at *28 (D.N.J. Feb. 5, 2010) ("because Defendant

never itemized the charges, it does not appear to the Court that Plaintiffs had full knowledge of the facts when they made payments to Defendant… Additionally, *to the extent that Defendant charged Plaintiffs for expenses beyond those actually incurred, Plaintiffs certainly did not have full knowledge of the facts*."); <u>Simonson v. Hertz Corp</u>., 2011 U.S. Dist. LEXIS 32755, at *10-11  (D.N.J. Mar. 28, 2011); <u>Rickenbach</u>, <u>supra</u>, at 395.

## III.  THE FIRST CAUSE OF ACTION STATES A CLAIM UNDER THE NJCFA AND SHOULD NOT BE DISMISSED

### A. Nestle's Late Fees Are a Penalty Under the NJCFA

Plaintiff Ciser states a claim for relief under the NJCFA as a matter of law because Nestle's exorbitant late-payment penalty is an unconscionable commercial practice prohibited by the Act.

As a general matter, the New Jersey Consumer Fraud Act "represents a legislative broadside against unsavory commercial practices." <u>Real</u>, 198 N.J. at 514. The NJCFA broadly defines unlawful conduct to include "any unconscionable commercial practice." <u>N.J.S.A. 56:8-2</u>, and the New Jersey Supreme Court has emphasized that any conduct showing lack of good faith, honesty in fact and observance of fair dealing may violate the Act. <u>See</u> <u>Cox</u>, 647 A.2d. at 462.

Given the breadth of the NJCFA, New Jersey courts have ruled that excessive late fees are unconscionable commercial practices actionable

18

under the Act. For example, in denying Defendant AFG's motion to dismiss in <u>King's Choice Neckwear, Inc. v. FedEx Corp</u>., 2007 U.S. Dist. LEXIS 93843 (D.N.J. Dec. 20, 2007), the court concluded that the nearly forty percent late fee that AFG received from King's Choice was unenforceable under the NJCFA. Judge Cavanaugh cited two cases for the proposition that a ten percent late fee — an amount far below Nestle's charge — is considered "unusually large." <u>Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.</u>, 159 N.J. 484, 499 (1999)(citing <u>Garcia v. Canan</u>, 851 F. Supp. 327, 328 (N.D. Ill. 1994)).

**B. Plaintiffs State a Plausible Claim for Relief Under the NJCFA**

Defendant Nestle labors under a heavy burden in moving for a dismissal under Fed. R. Civ. P. 12(b)(6). A court should deny a motion to dismiss if a complaint states "a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. This plausibility standard simply "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 129 S.Ct. at 1949. As stated in <u>Twombly</u>: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." 550 U.S. at 556. "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." <u>Neitzke v. Williams</u>,

19

490 U.S. 319, 327 (1989).

A court must view the allegations in the Complaint in a light most favorable to the Plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F. 3d 478, 483 (3d Cir. 1998). The Court may dismiss for failure to state a claim only if it is certain that no relief could be granted under any factual scenario consistent with the allegations of Ciser's pleadings.  In evaluating a Motion to Dismiss, the foremost question is whether the Plaintiffs can offer facts that give rise to an entitlement of relief.  See Padilla v. Price Toyota, 2006 U.S. Dist. LEXIS 45506 at *6-7 (D. N.J. June 26, 2006).

Ciser alleges facts that easily give rise to the plausible inference that he is entitled to damages under the NJCFA. According to the Complaint, Nestle Waters charged Mr. Ciser a $15 late fee on multiple occasions between 2006 and 2009, and on Mr. Ciser's January 2009 bill that fee was nearly 50 percent of the total amount owed. (First Amended Complaint, ¶ 14).   Further, upon information and belief, Nestle routinely charges its customers $15 late fees, often amounting to well over 50 percent of the invoices to which the fees attach  (First Amended Complaint, ¶ 15);  these fees do not approximate Nestle's actual costs associated with its customers' late payments.  (Id. ¶ 18).

20

Should the court analyze whether the fee is a liquidated damages provision versus an unenforceable penalty, New Jersey courts look to four factors, each of which remain factually disputed and call for full discovery: 1) whether the charge or fee is a reasonable estimate of the potential costs incurred by the party collecting the fee; 2) whether the actual costs or losses suffered by the party collecting the fee are difficult to ascertain; 3) the operation or overhead costs to the collecting party resulting from the untimely payments; and 4) industry standards.  <u>Metlife</u>, 159 N.J. at 501-503. Further, under <u>Metlife</u> a fee may be invalidated as a penalty if it involves "unusually large percentages or explicit evidence of a coercive intent."  <u>Id.</u> at 499. Given that assessing these factors requires an extensive fact-based inquiry, Nestle's motion to dismiss is inappropriate. Defendant Nestle has not demonstrated that, as a matter of law, the $15 late fee charged to Ciser was a reasonable estimate of the actual costs incurred.

## IV.   <u>PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED UNDER FED. R. CIV. P. 9(b)</u>

### A. Rule 9(b) Does Not Apply Because Plaintiffs' Claims Do Not "Sound in Fraud"

Under Fed. R. Civ. P. 9(b), a party alleging fraud must meet a heightened pleading standard that requires stating the circumstances of the fraud with "particularity." This heightened standard does not apply to Ciser

because his claim does not "sound in fraud." To the contrary, Ciser alleges that Defendant Nestle's unreasonably high late fee is an unlawful penalty and "unconscionable practice" under the NJCFA.

Third Circuit cases establish that where statutory causes of action do not necessarily involve fraud, courts must examine the specific allegations of a complaint to determine whether particular counts are "grounded in fraud." See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269-274 (3d Cir. 2006). Claims brought under the NJCFA do not require an allegation of fraud. To the contrary, the Act defines unlawful conduct in the *disjunctive* as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact." N.J.S.A. 56:8-2; see also Cox, 138 N.J. at 17-20; State v. Hudson Furniture Co., 165 N.J. Super. 516, 520 (App. Div. 1979). As the Cox court noted, the term "unconscionability" is "an amorphous concept obviously designed to establish a broad business ethic. The standard of conduct that the term 'unconscionable' implies is a lack of 'good faith, honesty in fact and observance of fair dealing.'" Cox, 138 N.J. at 18 (citing Kugler v. Romain, 58 N.J. 522, 543 (1971)). Further, "Unconscionability is to be interpreted liberally in order to effectuate the public purpose of the NJCFA." Jefferson Loan Co., Inc. v. Session, 938

A.2d 169 (N.J. Sup. Ct. App. Div. 2008) (citing <u>Assocs. Home Equity Servs., Inc. v. Troup</u>, 778 A.2d 529 (N.J. Sup. Ct. App. Div. 2001)).

Under the NJCFA, only those claims which "sound in fraud" are subject to the heightened pleading requirements of Rule 9(b). <u>See</u>, <u>e.g.</u>, <u>Soto v. Quicken Loans, Inc.</u>, 2010 U.S. Dist. LEXIS 131913, at *12 (D.N.J. Dec. 14, 2010); <u>Smajlaj v. Campbell Soup Co.</u>, 782 F. Supp. 2d 84, 98 n.9 (D.N.J. 2011); <u>Dewey v. Volkswagen</u>, 558 F. Supp. 2d 505, 524-27 (D.N.J. 2008) (dismissing fraud-based claim but denying motion to dismiss claim based on unconscionable commercial practices). When a plaintiff alleges unconscionability rather than fraud, Rule 9(b) is inapplicable. <u>A-1 Advanced Moving & Storage Inc. v. Norvergence Inc.</u>, 424 B.R. 663, 692-95 (Bankr. D.N.J. 2010); <u>Katz v. Live Nation, Inc</u>., 2010 U.S. Dist. LEXIS 60123, at *13-14 (D.N.J. June 17, 2010); <u>Payne v. Fujifilm USA, Inc.</u>, 2007 U.S. Dist. LEXIS 94765, at *28 (D.N.J. Dec. 28, 2007)("a liberal reading of Plaintiff's Complaint suggests that Plaintiff's NJCFA claim pertains to contractual unconscionability, rather than 'fraud.' Plaintiff is not required to meet the higher pleading standard for claims alleging fraud."); <u>Porter v. Property Damage Control Group, Inc.</u>, 2007 U.S. Dist. LEXIS 74004, at *5-6 (E.D.N.Y. Sept. 28, 2007). <u>See also</u> <u>Knight v. SmithKline Beecham Corp.</u>, 2011 U.S. Dist. LEXIS 101926, at *5-6 (E.D. Pa. Sept. 7, 2011)("Claims

23

alleging unfair conduct are assessed under the standard of Federal Rule of Civil Procedure 8, not 9(b)."); Kirtley v. Wadekar, 2006 U.S. Dist. LEXIS 60309, at *7 (D.N.J. Aug. 24, 2006)(claim for negligent misrepresentation does not "sound in fraud" and not subject to Rule 9(b)).

In this case, Plaintiffs allege an unconscionable business practice, not fraud. According to Ciser, Nestle "charges its customers exorbitant and illegal late-fee penalties on bottled water deliveries." (First Amended Complaint ¶ 2). The fee "can exceed 76% percent or more per annum," (First Amended Complaint, ¶ 3), and is "far beyond the boundaries of late charge rates customarily utilized by other bottled water and similar-type delivery companies in the nation." (First Amended Complaint, ¶ 3).

The cases cited by Defendant Nestle are readily distinguishable, since unlike Ciser, the plaintiffs in those cases alleged fraud.  In Arlandson v. Hartz Mt. Corp., 792 F. Supp. 2d 691, 710 (D.N.J. 2011),  plaintiffs brought a class action lawsuit against a manufacturer of flea and tick treatments that alleged fraudulent marking and advertising. In Dist. 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 513 (D.N.J. 2011) Plaintiffs brought a class action alleging that the Defendant illegally promoted the drug Risperdal for off-label purposes through a fraudulent and deceptive marketing program.  Similarly, in Ramon v. Budget Rent-A-Car

Sys., 2007 U.S. Dist. LEXIS 11665, at *3 (D.N.J. Feb 20, 2007), the plaintiff brought suit under the NJCFA under several theories, including that the Defendant's refueling service charge was fraudulent. ; see also Ramon v. Budget Rent-A-Car Sys., 2006 U.S. Dist. Ct. Pleadings 950428 at ¶¶47-48 (D.N.J. Apr. 21, 2006).  In contrast to these above cases, Ciser's claim does not "sound in fraud."

## B.  Even if Rule 9(b) Applies, Plaintiffs' Complaint Satisfies the Standard

Although Plaintiffs' claims do not "sound in fraud," the Complaint easily satisfies Rule 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision of some measure of substantiation into a fraud allegation." Frederico, 507 F.3d at 200.

Ciser's complaint conforms to these requirements.  Ciser clearly places Nestle on notice of its precise unlawful conduct: the imposition of $15 late fees on its customers' accounts regardless of the amount or duration

of the underlying debt.  Ciser alleges that he was assessed such a fee on multiple occasions and notes a specific instance in which the fee amounted to nearly 50 percent of the invoice upon which it was imposed.  Plaintiff also cites an example of an instance where a late fee represented 76% of another customer's bill. (First Amended Complaint ¶ 15).  Plaintiff further alleges that the fee bears no reasonable relationship to Nestle's actual costs attributable to late payment.  Hence, it represents an unlawful penalty.

Further, even if Rule 9(b) were appropriate, applicable law recognizes that in applying the standard, courts must take into account that plaintiffs may not possess detailed knowledge of class-related allegations.  See, e.g., Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1464 (D.N.J. 1986) (holding that "where the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings, less specificity is required."); accord Pacholec v. Home Depot USA, Inc., 2006 U.S. Dist. LEXIS 68976, at *4-5 (D.N.J. Sept. 25, 2006). Similarly, "Rule 9[(b)] does not require plaintiffs to plead facts that, by the nature of the alleged fraud, are within the defendants' control." In re Mercedes-Benz Antitrust Litig., 157 F. Supp. 2d 355, 368 (D.N.J. 2001).  "Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." In re

Craftmatic Secs. Litig., 890 F.2d 628, 645 (3d Cir. 1989); see also C.W. Sommer & Co. v. Rockefeller, 311 F.3d 198, 216 (3d Cir. 2002); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997); In re Magnesium Oxide Antitrust Litig., 2011 U.S. Dist. LEXIS 121373, at *69-70 (D.N.J. Oct. 20, 2011).

## V.   PLAINTIFFS' SECOND CAUSE OF ACTION STATES A CLAIM UNDER THE COMMON LAW

Nestle's late fee also constitutes an unlawful and unenforceable contractual penalty under the common law.

Metlife and Kings Choice are just two of a long string of New Jersey and out-of-state cases banning contractual penalties and allowing for recovery where such payments exceed reasonable compensation. **Every United States jurisdiction and indeed, other common law judicial systems, such as Ireland, England, New Zealand, Scotland, and Canada refuse to enforce damage terms so high as to be considered a penalty.**[2]

---

[2] Taylor v. Sandiford, 20 U.S. 13, 15(1822)(Marshall, J.); Garrett v. Coast and Southern Federal Savings and Loan Association, 9 Cal. 3d. 731 (1973); Beasley v. Wells Fargo Bank, N.A., 1 Cal. Rptr. 2d 446 (Ct. App. 1991); Brenner v. Little Red Schoolhouse, Ltd., 302 N.C. 207, 214 (1981); The Wheeling Clinic v. Van Pelt, 192 W. Va. 620, 624 (1994); Highgate Association v. Merryfield, 157 Vt. 313, 316 (1991); Gary Outdoor Advertising Co. v. Sun Lodge, Inc., 133 Ariz. 240, 243 (1982); SP Terrace, L.P. v. Meritage Homes of Texas, LLC, 334 S.W.3d 275, 287 (Tex. App. 2010); Benya v. Gamble, 321 S.E. 2d 57 (S.C. App. 1984); Norman v. Durham, 380 S.W.2d 296, 304 (Mo. 1964)).

See further: <u>Frank v Jansen</u>, 303 Minn. 86, 90-91, (1975); <u>Man O War Restaurants, Inc. v. John Martin</u>, 932 S.W.2d 366, 369 (Ky. 1996); <u>Koeing v. Schlitz Breweries</u>, 126 Wis. 349, 368  (1985); <u>Shallow Brook Associates v. Dube</u>, 135 N.H. 40, 48-49 (1991); <u>Pacheo v. Scoblinko</u>, 532 A.2d 1036, 1038, 1039 (Me. 1987); <u>Council v Hogan</u>, 566 A.2d 1070, 1072 (D.C. App. 1989); <u>Colby v. Bailey</u>, 5 Haw. 152, 153 (1884); <u>Kona v. Pac Group</u>, 680 F. Supp. 1438 (D. Haw. 1988); <u>Kalenka v. Taylor</u>, 896 P.2d 222, 229 (Alaska 1995); <u>United States School District 315 v. DeWerff</u>, 6 Kan. App. 2d 77, 81, (1981); <u>Rohauer v. Little</u>, 736 P.2d 403, 410 (Col. 1987).

See further: <u>Zito v. Goaude</u>, 122 R.I. 886 (1979); <u>Atlantic Aviation v. Provident Life and Accident Insurance Co.</u>, 1989 Dist. LEXIS 10261 (D. Del. 1989); <u>Worley v. McCarty</u>, 354 Mich. 599 (1958); <u>Camelot Music, Inc. v. Mars Reality and Improve. Co.</u>, 514 So. 2d 987 (Ala. 1987); <u>Lane v. Pfeifer</u>, 568 S.W.2d 212 (Ark. 1978); <u>301 Dahlgren Ltd. V. Board of Supervisors</u>, 240 Va. 200, 201 (1990).

See further: <u>AFLAC, Inc v. Williams</u>, 265 Ga. 351, 354, (1994); <u>Coffman v. Olson & Co., P.C.</u>, 906 N.E.2d 201, 210 (Ind. Ct. App. 2009); <u>Gershin v. Scherman</u>, 685 N.E.2d 1125, 1997 Ind. App. LEXIS 1423, at *10 (Ct. App. 1997); <u>Crown Linen Serv., Inc. v. Apple E. of Danbury, Inc.</u>, 2008 WL 1971317, at *2 (Conn. Super. Ct. Apr. 15, 2008); <u>Harmon v. Eggers</u>, 699 S.W.2d 159 163 (Tenn. 1985); <u>Lombardo v. Deshote</u>, 647 So. 2d 1086, 1081 (La. 1994) (Applying Civil Code).
See further: <u>Walter Implement, Inc., v. Focht</u>, 107 Wash 553 (1987); <u>Woodhaven Apartments v. Washington</u>, 942 P.2d 918 (Utah 1997); <u>Phillips v Phillips</u>, 820 S.W.2d 785 (Tex. 1991); <u>Transocean Enter., Inc. v. Ingalls Shipbuilding, Inc.</u>, 33 So. 3d 459, 468 (Miss. 2010), reh'g denied (May 13, 2010), cert. denied, 131 S. Ct. 473 (2010); <u>Lake Ridge Academy v. Carney</u>, 613 N.E.2d 183, 188 (Ohio 1993); <u>Illingwroth v Bushong</u>, 297 Or. 675 (1984); <u>Fischer v Schmeling</u>, 520 N.W.2d 820, 822 (N.D. 1994); <u>Wandler v. Lewis</u>, 1997 S.D. LEXIS 98, at *21 (July 23, 1997); <u>Story v. City of Bozeman</u>, 259 Mont. 207, 227 (1993); <u>Kushan v. Strong</u>, 39 N.M. 281 (1935); <u>Graves v. Cupic</u>, 75 Idaho 451 (1954); <u>Massey v. Love</u>, 478 P.2d 948 (Okla. 1979); <u>Rohlin Construction Co. v. Hintoy</u>, 476 S.W.2d 78 (Iowa 1991); <u>Loomis v. Lange Fin. Corp.</u>, 109 Nev. 1121 (1993); <u>Maxey v. Glindmeyer</u>, 379 So. 2d 297, 301 (Miss. 1980); <u>Abel Construction Co. v.</u>

As discussed above, New Jersey courts have found that even a 10 percent late fee is "unusually large." MetLife, 159 N.J. at 499 (citing Garcia, 851 F. Supp. at 328).   Given that Ciser alleges that Nestle Waters has charged him late-payment penalties of roughly 50 percent, he states a plausible claim for relief, necessitating further factual investigation under the factors set forth in Metlife. Id. at 501-03.

Defendant Nestle also has breached its duty of good faith and fair dealing. The duty of good faith and fair dealing is implicit in every contractual relationship in New Jersey.  Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001)(citing Sons of Thunder, Inc. v. Borden, Inc. 690 A.2d 575 (N.J. 1997) (collecting cases)).  It operates to ensure that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, Inc., 690 A.2d at 587 (quoting Palisades Properties, Inc. v.

---

Seward, 188 Neb. 166 (1972); Weber v Broady, 255 Mo. 195 (1914); Jessen v. Jessen, 871 P.2d 987 (Wyo. 1991).

See the following foreign, common law jurisdictions demarcating between liquidated damages clause and a disproportionately high and unenforceable penalty: 370-341 Ontario Ltd. v. Mikhalin, 1996 O.T.C. LEXIS 3913, at *14 (Ontario Court of Justice 1996); Hart Ltd v. Mitchell, 1996 S.C.L.P.R. 68 (Sheriff Court, Glasgow, Scotland Oct. 30, 1995); Lordsvale v. Bank of Zambia, 30 E.R. 165 (Queens' Bench 1996); Schiesser International v. Gallager, 106 I.L.T.R. 22 (Ireland 1971); General Finance Acceptance Ltd. v. Melrose, 1 N.Z.L.P.R. 465 (High Court Auckland 1987).

Brunetti, 44 NJ 117, 130 (1965)). By slapping Ciser with an unconscionable penalty, Nestle interfered with his ability to participate in an ongoing course of dealing under fair and reasonable terms.  Instead, the Company presented him with the dilemma of either paying its unreasonably high late fee or losing his monthly water delivery and damaging his credit rating.

## VI.   PLAINTIFFS' THIRD CAUSE OF ACTION STATES A CLAIM FOR UNJUST ENRICHMENT

Under New Jersey law, a claim of unjust enrichment has only two essential elements: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable."  Wanaque Borough Sewerage Auth. v. West Milford, 677 A.2d 747, 753 (N.J.1996)(internal citations omitted); see also In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).   Further, authority is clear that, under an unjust enrichment theory, a party who pays an unlawful penalty may recover as restitutionary damages that segment of the payment which is unreasonably high.  King's Choice Neckwear, Inc. v. FedEx Corp., 2007 U.S. Dist. LEXIS 93843, at *22-23 (D.N.J. Dec. 20, 2007).  In Kutzin v. Pirnie, the New Jersey Supreme Court held:

> That if a plaintiff can and does show by proper evidence that the defendant is holding an amount of money as a penalty rather than as compensation for injury, he should be given judgment for restitution of that amount.

30

124 N.J. 500, 512 (1991).

In <u>Kutzin</u>, the Court overruled the common-law rule that a defaulting buyer may not recover his deposit, irrespective of the actual damages suffered, and instead adopted the modern approach set forth in section 374(1) of the Restatement (Second) of Contracts, whereby the breaching party is entitled to restitution for any benefit that they conferred by way of part performance or reliance of excess of the loss that they caused by his own breach.  124 N.J. at 516.  In doing so, the Court cited the broad policy purpose of economic efficiency.  <u>Id.</u> Further, the Court noted:

> Although we do not consider the validity or enforceability of a liquidated-damages clause in this case, we are reminded of Professor Corbin's warning: "Penalties and forfeitures are not favored; and calling an outrageous penalty by the more kindly name of liquidated damages does not absolve it from its sin."

<u>Id.</u> at 518 (internal citations omitted).

Thus, relying on <u>Kutzin</u>, New Jersey's courts have held consistently that where a party pays a penalty that exceeds reasonable damages, he may sue to recover the excess as restitution for unjust enrichment.  <u>See</u>, <u>e.g.</u>, <u>Nohe v. Roblyn Development Corp.</u>, 296 N.J. Super. 172, 175 (App. Div. 1997); <u>Van Es v. Honeyleaf Properties, Inc.</u>, 253 N.J. Super. 566, 568 (App. Div. 1992) (a party is entitled to restitution of payments made under a

liquidated damages clause, if such payment is unreasonable in light of the anticipated or actual loss caused by the party's breach).

Further, "Almost any kind of case in which the defendant gains from the plaintiff and in which it would be unjust … to permit the defendant to retain the gain is a good candidate for restitutionary recovery." Dobbs, Law of Remedies, § 4.1, p. 553 (West. Pub. Co. 1993).

All elements for a restitutionary recovery are present here.  Nestle profited by its own wrong at the expense of Plaintiff Ciser and the class of consumers injured by the Company's practices.  In violation of New Jersey law and public policy, Nestle assessed its customers impermissible late fee penalties.  Plaintiffs' allegations amply support an unjust enrichment claim.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' well-pled complaint should be denied.


Dated:  January 6, 2012

      Fort Lee, New Jersey

_____s/_____

Steven L. Wittels (SLW-8110)

Sanford Wittels & Heisler, LLP
440 West Street
Fort Lee, NJ 07024
(201) 585-5288

*Attorneys for Plaintiffs Gary
Ciser and Ciser Computer
Consulting*

33

## CERTIFICATE OF SERVICE

I, Steven L. Wittels, hereby certify under penalty of perjury that on this 6th day of January 2012 true and correct copies of Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint Pursuant to the Fed. R. Civ. P. 9(B) and 12(b)(6) were served on all counsel of record by operation of the Court's ECF system.

_____/s/_____

Steven L. Wittels