# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY CISER and CISER COMPUTER CONSULTING, on behalf of themselves and others similarly situated, | : Civil Action No. 11-cv-5031 (WJM) |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| NESTLÉ WATERS NORTH AMERICA INC., | **Motion Day:** **Monday, February 6, 2012** |
| Defendant. | |

---

## REPLY BRIEF OF DEFENDANT
## NESTLÉ WATERS NORTH AMERICA INC.
## IN FURTHER SUPPORT OF MOTION TO DISMISS
## FIRST AMENDED COMPLAINT
## PURSUANT TO *FED. R. CIV. P.* 9(b) AND 12(b)(6)

---

ORLOFF, LOWENBACH, STIFELMAN
& SIEGEL, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, New Jersey  07068-1097
(973) 622-6200
Attorneys for Defendant
Nestlé Waters North America Inc.

Of Counsel:
Jeffrey M. Garrod

On the Brief:
Jeffrey M. Garrod
Craig A. Ollenschleger

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

LEGAL ARGUMENT ...................................................................................... 2

    I.   PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS ............... 2

    II.  THE VOLUNTARY PAYMENT RULE BARS PLAINTIFFS' CLAIMS ..... 5

    III. PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE CFA CLAIM .................. 9

    IV. PLAINTIFFS DO NOT ALLEGE A COMMON LAW CLAIM ................. 14

    V.  PLAINTIFFS DO NOT ALLEGE AN UNJUST ENRICHMENT
        CLAIM ....................................................................................... 14

CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Ashcroft v. Iqbal,
556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................................. 1, 4, 11

Barrows v. Chase Manhattan Mortg. Corp.,
465 F.Supp.2d 347 (D.N.J. 2006) ........................................................................ 3

Beasley v. Wells Fargo Bank, N.A.,
1 Cal.Rptr.2d 446 (Cal. Ct. App. 1991) ............................................................. 14

Clark v. McDonald's Corp.,
213 F.R.D. 198 (D.N.J. 2003) .............................................................................. 4

Cotton v. Med-Cor Hlth. Info. Sols., Inc.,
472 S.E.2d 92 (Ga. App. Ct. 1996) ...................................................................... 8

Cox v. Sears Roebuck & Co.,
138 N.J. 2 (1994) ........................................................................................ 5, 7, 10

DeHart v. U.S. Bank, N.A. ND,
___ F.Supp.2d ___, 2011 WL 3651270 (D.N.J. Aug. 18, 2011) ....................... 3

Dillon v. U-A Columbia Cablevision of Westchester, Inc.,
790 N.E.2d 1155 (N.Y. 2003) .............................................................................. 7

Dreyfus v. Ameritech Mobile Comms., Inc.,
700 N.E.2d 162 (Ill. App. Ct. 1998) ..................................................................... 8

Emergency Phys. of St. Clare's, LLC v. Proassurance Corp.,
2010 WL 3311861 (D.N.J. Aug. 19, 2010) ......................................................... 15

Fenwick v. Kay Am. Jeep, Inc.,
72 N.J. 372 (1977) ................................................................................................. 7

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) ................................................................................. 4

Frederico v. Home Depot,
507 F. 3d 188 (3d Cir. 2007) ................................................................................ 4

FW/PBS, Inc. v. City of Dallas,
   493 U.S. 215 (1990) ................................................................. 2

Garrett v. Coast & Southern Fed. S. & L. Ass'n,
   511 P.2d 1197 (Cal. 1973)...................................................... 14

Gennari v. Weichert Co. Realtors,
   148 N.J. 582 (1997)................................................................ 12

Green v. Green Mtn. Coffee Roasters, Inc.,
   2011 WL 6372617 (D.N.J. Dec. 20, 2011) ..................... 2, 5, 12

Harris v. Chartone,
   841 N.E.2d 1028 (Ill. App. Ct. 2005).................................... 7

In re Burl. Coat Fac'ry Secs. Lit.,
   114 F.3d 1410 (3d Cir. 1997)................................................ 6

In re Increase in Fees by N.J. State Bd. of Dentistry,
   84 N.J. 582 (1980)................................................................. 6

In re Processed Egg Prods. Antitrust Litig.,
   2011 WL 5980001 (E.D. Pa. Nov. 30, 2011)...................... 13

Indian Brand Farms, Inc. v. Novartis Crop. Prot., Inc.,
   617 F.3d 207 (3d Cir. 2010) ................................................ 9

Island Mortg. of New Jersey & Perennial Lawn Care, Inc. v. 3M,
   373 N.J. Super. 172 (Ch. Div. 2004).................................... 11

Joe Hand Proms., Inc. v. Mills,
   567 F.Supp.2d 719 (D.N.J. 2008) ........................................ 12

King's Choice Neckwear v. FedEx Corp.,
   2007 WL 4554220 (D.N.J. Dec. 20, 2007) .................. 9, 10, 14

Lewis v. Casey,
   518 U.S. 343 (1996) .............................................................. 13

Lieberson v. Johnson & Johnson Consumer Cos., Inc.,
   ___ F.Supp.2d ___, 2011 WL 4414214 (D.N.J. Sept. 21, 2011)................................... 5

McKenna v. Bank of Am.,
   2010 WL 2985643 (D.N.J. Jul. 26, 2010)............................ 12

Met Life Cap. Fin. Corp. v. Washington Ave. Assocs. L.P.,
  159 N.J. 484 (1999) ........................................................................... 9, 10, 14

MK Strategies, LLC v. Ann Taylor Stores Corp.,
  567 F.Supp.2d 729 (D.N.J. 2008) .............................................................. 15

N.J. Hosp. Ass'n v. Fishman,
  283 N.J. Super. 253 (App. Div. 1995)......................................................... 8

Palmucci v. Brunswick Corp.,
  311 N.J. Super. 607 (App. Div. 1998)......................................................... 11

Putnam v. Time Warner Cable of S.E. Wisc., L.P.,
  649 N.W.2d 626 (Wisc. 2002) .............................................................. 7, 9

Reilly v. Ceridian Corp.,
  ___ F.3d ___, 2011 WL 6144191 (3d Cir. Dec. 12, 2011) ........................... 2

Rickenbach v. Wells Fargo Bank, N.A.,
  635 F.Supp.2d 389 (D.N.J. 2009) .............................................................. 6

Sickles v. Cabot Corp.,
  379 N.J. Super. 100 (App. Div. 2005)....................................................... 7, 11

Skypala v. Mortg. Elec. Regis. Sys., Inc.,
  655 F.Supp.2d 451 (D.N.J. 2009) .............................................................. 3

Smith v. Prime Cable of Chicago,
  658 N.E.2d 1325 (Ill. App. Ct. 1995),
  app. den., 664 N.E.2d 648 (Ill. 1996).......................................................... 7

Solomon v. Bell Atl. Corp.,
  777 N.Y.S.2d 50 (N.Y.A.D. 2004).............................................................. 7

Suburban Transfer Serv., Inc. v. Beech Hldgs., Inc.,
  716 F.2d 220 (3d Cir. 1983) ...................................................................... 15

Szczubelek v. Cendant Mortg. Corp.,
  2001 WL 34875217 (D.N.J. Jun. 15, 2001) ................................................ 13

Terry v. Owatonna Canning Co.,
  119 N.J.L. 455 (E. & A. 1938)................................................................... 5

Thiedemann v. Mercedes-Benz USA, LLC,
  183 N.J. 234 (2005).................................................................................. 12

Travelers Indem. Co. v. Dammann & Co., Inc.,
   594 F.3d 238 (3d Cir. 2010) ............................................................................ 7

Van Holt v. Liberty Mut. Fire Ins. Co.,
   163 F.3d 161 (3d Cir. 1998) ................................................................. 7, 11, 13

Vogel v. Lutz,
   26 N.J. Misc. 281 (Dist. Ct. 1948) ................................................................. 8

Wilson v. Amerada Hess Corp.,
   168 N.J. 236 (2001) ...................................................................................... 14

Wilson v. Gen'l Motors Corp.,
   2006 WL 1767754 (App. Div. Jun. 29, 2006),
   aff'd, 190 N.J. 336 (2007) ............................................................................ 11

## STATUTES

N.J.S.A. 12A:2-102 ............................................................................................ 15

N.J.S.A. 17:16C-42 .......................................................................................... 10

N.J.S.A. 17:16D-12 .......................................................................................... 10

N.J.S.A. 56:8-2 ................................................................................................. 11

## RULES

Fed. R. Civ. P. 9(b) and 12(b)(6) ...................................................................... 15

## PRELIMINARY STATEMENT

Plaintiffs Gary Ciser ("Ciser") and Ciser Computer Consulting ("CCC") filed this lawsuit challenging defendant Nestlé Waters North America Inc.'s ("NWNA") $15 late fee as a penalty without "knowing whether Nestlé's fees reflect the actual cost of collecting his [Ciser] account." [Doc 13 at 5]. Ciser admits that he only has a belief that NWNA's late fee is "excessive and potentially unlawful" and has no way of knowing if there is any factual basis for his belief without "class-based discovery." [*Id.* at 17]. Having a belief (particularly one created by class counsel) that is grounded in conclusions not facts does not state a plausible claim for relief or entitle plaintiffs to class-based discovery. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). This is particularly true given that plaintiffs, by identifying material factual issues necessary to his causes of action that are individual to him and each putative class member, have indicated that class certification will not be appropriate. [See, *e.g.*, Doc. 13 at 8 (arguing Ciser's reliance, belief and feeling compelled); *id.* at 9, 11, 16 (arguing late fee paid under individual mistake of fact, duress and extortion)]. Because the amended complaint fails to state plausible claims as a matter of law, NWNA's motion to dismiss should be granted.

## LEGAL ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS

Tripped-up by their original allegations establishing that their claims are barred by the voluntary payment rule, plaintiffs filed an amended complaint in an obvious effort to avoid dismissal.   [Doc. 11].   Whereas their complaint expressly alleged the actual payment of a late fee on five occasions [Doc. 1 (¶¶25, 31)], their amended complaint scrupulously avoids re-pleading a single fact alleging the actual payment of a late fee.   Their clever blue-penciling has stripped their pleading of facts showing that they have standing to pursue their claims.

As a "bedrock requirement" of Article III, "plaintiffs must establish that they have standing to sue.   It is the plaintiffs' burden, at the pleading stage, to establish standing." Reilly v. Ceridian Corp., ___ F.3d ___, 2011 WL 6144191 at *2 (3d Cir. Dec. 12, 2011) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). "'[T]he complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." Id. (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)); see FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (standing may not be inferred, but must be shown affirmatively)).   "[T]he injury-in-fact element is often determinative," particularly in class actions where "[s]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." Green v. Green Mtn. Coffee

Roasters, Inc., 2011 WL 6372617 at *3 (D.N.J. Dec. 20, 2011) (annexed as Exhibit "A"). Plaintiffs must have been personally injured and may not rely on class allegations of injury. *Id.*

Plaintiffs have not "clearly and specifically" alleged facts showing that they suffered an injury-in-fact. Under the CFA, the injury-in-fact is known as an "ascertainable loss." See Barrows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d 347, 360-361 (D.N.J. 2006) ("The CFA contains its own standing requirement": "a plaintiff must present a claim of ascertainable loss."). An ascertainable loss is an "actual loss." *Id.* at 361 (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005)). "As a prerequisite to the right to bring a private action," a plaintiff must allege facts showing that he suffered an ascertainable (*i.e.*, actual) loss as a result of unlawful conduct under the CFA. Thiedemann, 183 N.J. at 246. This Court has dismissed actions for want of standing where, as here, a party fails to allege that it suffered an ascertainable loss by having actually paid a fee resulting from unlawful conduct. See DeHart v. U.S. Bank, N.A. ND, ___ F.Supp.2d ___, 2011 WL 3651270 at *9-10 (D.N.J. Aug. 18, 2011) (dismissing CFA claim for lack of standing when plaintiffs failed to allege ascertainable loss by actually paying fees allegedly caused by unlawful conduct); Skypala v. Mortg. Elec. Regis. Sys., Inc., 655 F.Supp.2d 451, 459 (D.N.J. 2009) (same); Barrows, 465 F.Supp.2d at 366 (same).

Far from ignoring its "substance" [Doc. 13 at 8], NWNA has shown that the amended complaint has none, as plaintiffs have failed to allege facts showing that they actually paid a late fee resulting from unlawful conduct under the CFA. The amended complaint does not allege that CCC ever paid a late fee. [See Doc. 11 (¶10)]. Nor does the amended complaint allege any well-pleaded facts supporting the conclusion, made solely in plaintiffs' brief,[1] that "[Ciser] paid the late fees at issue in this action." [Doc. 13 at 6, 8]. See Clark v. McDonald's Corp., 213 F.R.D. 198, 206 (D.N.J. 2003) ("[I]t is proper, and within the trial court's power, even on a motion to dismiss, to require the plaintiff to go beyond general allegations in the complaint and allege particularized facts supportive of its standing."). Plaintiffs' inartfully-attempted dodge of the voluntary payment rule [i.e., "Ciser felt compelled to pay his entire bills," Doc. 11 (¶18]] does not state that he actually paid a late fee or identify his payment of a late fee, and is another conclusion that does not forestall dismissal. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

Plaintiffs' argument that the mere assessment of a late fee constitutes an ascertainable loss is neither factually supported nor legally sound. [Doc. 13 at

---

[1] Plaintiffs cannot defeat NWNA's motion by presenting new, unpled facts in their brief. See Frederico v. Home Depot, 507 F. 3d 188, 201-202 (3d Cir. 2007).

7].  "[A]n ascertainable loss is roughly equivalent to 'any lost benefit of the bargain.'"  <u>Green</u>, 2011 WL 6372617 at *5 (quoting <u>Bosland v. Warnock Dodge, Inc.</u>, 197 N.J. 543, 558 (2009)).  It is shown by "'either out-of-pocket loss or a demonstration of loss in value.'"  <u>Id.</u> (quoting <u>Thiedemann</u>, 183 N.J. at 248).  Plaintiffs have not alleged that CCC did not receive the benefit of its bargain, as it received NWNA's product and did not suffer any out-of-pocket loss or other loss in value.  Moreover, Ciser does not have standing, as he did not contract to purchase NWNA's product [Doc. 11 (¶10)].  <u>See</u> <u>Id.</u>; <u>Lieberson v. Johnson & Johnson Consumer Cos., Inc.</u>, ___ F.Supp.2d ___, 2011 WL 4414214 at *4 (D.N.J. Sept. 21, 2011) (no injury-in-fact as plaintiff had not contracted to purchase products).[2]  His "pocketbook and credit-rating" were never "at stake" [Doc. 13 at 9], as no bill was directed to Ciser [<u>see</u> Doc. 8-1] and he had no obligation to pay any debt.  <u>See</u> <u>Terry v. Owatonna Canning Co.</u>, 119 N.J.L. 455, 457 (E. & A. 1938).  Therefore, plaintiffs did not suffer an injury and do not have standing.

## II.  <u>THE VOLUNTARY PAYMENT RULE BARS PLAINTIFFS' CLAIMS</u>

If Ciser or CCC actually paid a late fee, that payment triggers the voluntary payment rule barring claims for money paid voluntarily "without

---

[2]  <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 23 (1994), makes plain that a contract for the purchase of goods or services is the linchpin of a plausible CFA claim: "Moreover, <u>by virtue of his contract</u> with Sears, plaintiff incurred a legal obligation in the form of a debt."  [Emphasis supplied].

mistake of fact, or fraud, duress or extortion." In re Increase in Fees by N.J. State Bd. of Dentistry, 84 N.J. 582, 588 (1980). The amended complaint alleges that NWNA's late fee policy was disclosed on its website [Doc. 11 (¶16)] and that the late fees were separately itemized on the monthly invoices[3] received by CCC [id. at ¶¶14, 18]. The invoices not only identified each late fee that was charged for nonpayment but, before charging a late fee, they included a warning to CCC that it should "[r]emember, past due accounts are subject to a late fee." [Exhs. 2, 5, 8, 11 & 14 to Doc. 8-1]. These allegations establish that plaintiffs' claims are barred.

Resorting to reversed and overruled law,[4] and generalized statements of public policy, plaintiffs argue that the New Jersey Supreme Court would not apply the voluntary payment rule to bar their CFA claim. [Doc. 13 at 10-13]. As they acknowledge [see id. at 9], no New Jersey court has held that the voluntary payment rule does not bar CFA claims. Nor has this Court so held [id. at 11], as it expressly declined to decide that issue in Rickenbach v. Wells Fargo Bank, N.A., 635 F.Supp.2d 389, 395 n.3 (D.N.J. 2009). This Court must now predict how the

---

[3]   Plaintiffs do not contest that this Court can consider these invoices on this motion. See In re Burl. Coat Fac'ry Secs. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997).

[4]   See Doc. 13 at 13 (citing Muhammed v. Cty. Bank of Rehoboth Beach, DE, 189 N.J. 1 (2006), overruled by, AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011)); id. at 14 (citing Carducci v. Aetna U.S. H'thcare, 247 F.Supp.2d 596 (D.N.J. 2003), rev'd, 402 F.3d 156 (3d Cir. 2005)).

New Jersey Supreme Court would rule on this question.  See Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 244 (3d Cir. 2010).

Given that the purpose of the CFA is to "prevent deception, fraud, or falsity," Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 376 (1977), the New Jersey Supreme Court has explained that "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud."  Cox, 138 N.J. at 17.  Hence, the capacity to mislead is "a fundamental predicate for maintaining a claim under the CFA," including one alleging an unconscionable commercial practice.  Sickles v. Cabot Corp., 379 N.J. Super. 100, 112 (App. Div. 2005); accord Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998).  By contrast, the voluntary payment rule applies when plaintiffs allege facts showing that payment was made with knowledge of the facts forming the basis for objecting to the payment.  This Court should follow the sound reasoning of those courts holding that the voluntary payment rule bars consumer fraud and common law claims where plaintiffs allege facts showing their knowing payment of clearly disclosed late fees.[5]

---

[5]  See, e.g., Dillon v. U-A Columbia Cablevision of Westchester, Inc., 790 N.E.2d 1155, 1156 (N.Y. 2003); Putnam v. Time Warner Cable of S.E. Wisc., L.P., 649 N.W.2d 626, 637 n.12 (Wisc. 2002); Harris v. Chartone, 841 N.E.2d 1028, 1030-32 (Ill. App. Ct. 2005); Solomon v. Bell Atl. Corp., 777 N.Y.S.2d 50, 56 (N.Y.A.D. 2004); Smith v. Prime Cable of Chicago, 658 N.E.2d 1325, 1334 n.8 (Ill. App. Ct. 1995), app. den., 664 N.E.2d 648 (Ill. 1996).

Plaintiffs' fallback position -- that Ciser's purported payments were made under duress, extortion or mistake of fact -- is not plausible. [Doc. 13 at 14-18]. The conclusion that "Ciser felt compelled to pay his entire bills, including the late fees" is not supported by well-pleaded facts plausibly showing duress or extortion.[6] [Doc. 11 (¶18)]. The conclusion that Ciser lacked knowledge of facts and paid late fees under a mistake of fact is also not supported by well-pleaded facts, which cannot be alleged in his brief. [Doc. 13 at 17]. His lack of knowledge that the late fees were "excessive and potentially unlawful" is, at best, a mistake of law.[7] That these legal defenses, as do all defenses, involve facts does not relieve plaintiffs from alleging facts supporting them, which they have not done.

---

[6] Plaintiff's argument that he was under duress and extorted to pay a late fee to prevent the termination of CCC's contract with NWNA to buy bottled water is not only absurd, but no facts plausibly showing that Ciser was under duress or extorted are pled.   Plaintiffs cannot use duress and extortion as excuses for why Ciser claims he paid the late fees.  See Vogel v. Lutz, 26 N.J. Misc. 281, 284 (Dist. Ct. 1948) (holding that voluntary payment doctrine bars plaintiff's claim to recover money paid where payor felt obligation to pay for services, even if defendant's claim for payment of services was unenforceable as against public policy); cf. Dreyfus v. Ameritech Mobile Comms., Inc., 700 N.E.2d 162, 167 (Ill. App. Ct. 1998) (payments to maintain cell phone service, which was not a necessity, were not made under duress).  Nor are there any facts plausibly showing that Ciser was seeking to avoid harm to his credit rating, another incredible claim by Ciser, as he was not obligated to pay the $15 late fee and his failure to pay it would not have destroyed his credit.  See Cotton v. Med-Cor Hlth. Info. Sols., Inc., 472 S.E.2d 92, 96 (Ga. App. Ct. 1996) (impairment of credit did not render payment involuntary).

[7] Cf. N.J. Hosp. Ass'n v. Fishman, 283 N.J. Super. 253, 266-267 (App. Div. 1995) (holding that plaintiffs' lack of understanding that statutory fee was

*(continued on next page)*

## III.   PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE CFA CLAIM

The First Cause of Action does not state a plausible claim for relief under the CFA as a matter of law and should be dismissed.  There is no dispute that a CFA claim requires (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal connection between them.  Indian Brand Farms, Inc. v. Novartis Crop. Prot., Inc., 617 F.3d 207, 218 (3d Cir. 2010).  Plaintiffs have not alleged facts plausibly suggesting any of these indispensable elements.

Relying upon the non-precedential and non-binding decision in King's Choice Neckwear v. FedEx Corp., 2007 WL 4554220 (D.N.J. Dec. 20, 2007) [Doc. 13 at 19], plaintiffs argue that NWNA's charging a flat $15 late fee, regardless of the amount or duration of the debt, is excessive and, therefore, an unconscionable commercial practice in violation of the CFA.  [Id. at 18].  King's Choice, a pre-Iqbal decision on a motion to dismiss, misapplied Met Life Cap. Fin. Corp. v. Washington Ave. Assocs. L.P., 159 N.J. 484 (1999), which is inapposite to a consumer transaction.  Met Life, 159 N.J. at 500, addressed whether, as between sophisticated commercial entities, a liquidated damages provision in a $1.5 million commercial loan contract, was a valid measure of liquidated damages.  The

_____

(continued from previous page)
unconstitutional was mistake of law that was no defense to doctrine); cf. also Putnam, 649 N.W.2d at 633-634 (holding that plaintiffs' alleged lack of knowledge of cable company's true costs was not a mistake of fact precluding doctrine).

decision expressly states that "[t]his holding applies only to commercial loan transactions and does not address the enforceability of liquidated damage clauses in consumer contracts…." *Id.* at 500 n. 2.

Moreover, King's Choice did not hold, and plaintiffs have cited no authority holding, that the mere charging of a fixed late fee, regardless of the amount or duration of the debt, is per se unlawful or unconscionable.[8] Indeed, it is not per se unlawful or unconscionable under New Jersey law, as the New Jersey Legislature has enacted consumer statutes which expressly authorize the charging of late fees for payment delinquencies regardless of the ratio of the late fee to the outstanding balance.   See N.J.S.A. 17:16D-12 (Insurance Premium Company Finance Act authorizing $25 late fee on 10-day delinquent payment); N.J.S.A. 17:16C-42 (Retail Installment Sales Act authorizing $10 late fee on 10-day delinquent payment).   Plaintiffs cannot plausibly suggest a CFA claim simply by making the conclusory allegation that the late fee was "exorbitant."

Furthermore, contrary to New Jersey Supreme Court authority, King's Choice permitted an alleged breach of contract to be converted into an unconscionable commercial practice without analyzing whether any of the essential elements of a CFA claim had been satisfied.   See Cox, 138 N.J. at 20

---

[8]   How NWNA's conduct is unlawful is a mystery, as nowhere do plaintiffs identify what law, statute or regulation has been violated by charging a late fee.

(breach of contract is not per se unfair or unconscionable and does not violate the CFA absent substantial aggravating circumstances). This *sui generis*, pre-Iqbal decision, lacking any relevant legal analysis, should not be followed by this Court.

Plaintiffs cannot transform what they acknowledge is an unpled breach of contract claim into a CFA claim simply by claiming "unconscionable" conduct. [Doc. 11 (¶¶6, 20)]. The concept of unconscionability cannot be untied from its moorings: "[U]nconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8-2." Palmucci v. Brunswick Corp., 311 N.J. Super. 607, 615-616 (App. Div. 1998). CFA unconscionable practice claims cannot stand as a matter of law unless they are supported by facts showing deceptive or misleading conduct. See Sickles, 379 N.J. Super. at 112.[9]

---

[9]   See, *e.g.*, Wilson v. Gen'l Motors Corp., 2006 WL 1767754 at *9 (App. Div. Jun. 29, 2006), aff'd, 190 N.J. 336, 339 (2007) (dismissing CFA unconscionable practice claim "because there is no act alleged that constitutes deception or includes any type of misleading behavior directed at these plaintiffs"); Sickles, 379 N.J. Super. at 116 (dismissing CFA unconscionable practice claim "bereft of any allegation" of fact showing deception); Island Mortg. of New Jersey & Perennial Lawn Care, Inc. v. 3M, 373 N.J. Super. 172, 177 (Ch. Div. 2004) (dismissing CFA unconscionable practice claim failing to show practice had a capacity to mislead); accord Van Holt, 163 F.3d at 168 (affirming summary judgment dismissing CFA unconscionable practice claim failing to show misleading conduct); Palmucci, 311 N.J. Super. at 617 (affirming directed verdict dismissing CFA unconscionable practice claim when challenged policy was not shown to be deceptive).

Plaintiffs' deficient CFA claim is not supported by any facts showing that charging a late fee was a deceptive or misleading act that induced or lured plaintiffs to purchase NWNA's bottled water product. There is no allegation that charging a late fee (which accrued after CCC contracted with NWNA to purchase bottled water) deceived and induced CCC. See Joe Hand Proms., Inc. v. Mills, 567 F.Supp.2d 719, 724 (D.N.J. 2008); Gennari v. Weichert Co. Realtors, 148 N.J. 582, 607 (1997). The amended complaint debunks this theory by alleging that NWNA's late fee policy was disclosed on its website and that the late fees were separately itemized on the monthly invoices received by CCC. [Doc. 11 (¶¶14, 16, 18)]. The back of each invoice also sets forth the late fee policy. The invoices identified each late fee and included a warning to customers who missed a payment: "Remember, past due accounts are subject to a late fee." [Doc. 8-1].

Plaintiffs have not alleged facts showing that NWNA's charging a late fee proximately caused them to suffer an ascertainable loss, either by way of an out-of-pocket loss or a loss in value. See Thiedemann, 183 N.J. at 248. "Under the CFA, Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered." Green, 2011 WL 6372617 at *6. It is obvious that charging a late fee after the contract was entered into could not have misled or deceived them to purchase NWNA's product. Cf. McKenna v. Bank of Am., 2010 WL 2985643 at *3 (D.N.J. Jul. 26, 2010) (dismissing CFA claim as plaintiff could

-12-

not have been induced to purchase property by report received after the fact). Plaintiffs cannot cure this defect by making conclusory allegations "upon information and belief" about fees charged to unidentified customers [Doc. 13 at 20]. See In re Processed Egg Prods. Antitrust Litig., 2011 WL 5980001 at *5 (E.D. Pa. Nov. 30, 2011) (pleading upon information and belief still requires specific facts upon which belief is reasonably based). Claims of class injury cannot support their claim. See Lewis v. Casey, 518 U.S. 343, 357 (1996) (plaintiff in class action must show personal injury and cannot rely on injuries suffered by other members of putative class).

Conceding the fatal deficiency of their CFA claim, plaintiffs admit that they do not have knowledge of any facts supporting their vacuous claim that the late fees do not approximate NWNA's actual costs. [Id. at 17]. Not only does the amended complaint fail to allege facts plausibly suggesting a CFA claim, but it clearly does not satisfy Rule 9(b)'s heightened particularity standard, which also warrants dismissal here. Cf. Szczubelek v. Cendant Mortg. Corp., 2001 WL 34875217 (D.N.J. Jun. 15, 2001) (applying Rule 9(b) to CFA claim alleging excessive fees). Plaintiffs' CFA claim is grounded in nothing more than what Ciser, or his attorney, believes is an excessive late fee. This is insufficient to state a valid CFA claim. See Van Holt, 163 F.3d at 168 ("Mere customer dissatisfaction does not constitute consumer fraud.").

## IV.   PLAINTIFFS DO NOT ALLEGE A COMMON LAW CLAIM

The Second "Cause of Action" is a misnomer, as there is no "cause of action" for violation of an unidentified common law or for penalty.   Neither the amended complaint nor plaintiffs' brief identifies a common law cause of action. Their reliance upon King's Choice, 2007 WL 4554220, is unpersuasive, as that case assumed, without analyzing or deciding, that a cause of action exists.   [Doc. 13 at 27].   MetLife, 159 N.J. at 489, certainly does not support plaintiffs' position, as the defendant in that case asserted "penalty" as an affirmative defense to a contract claim for liquidated damages.   That is not this case.   Indeed, of the more than fifty American and foreign cases cited in plaintiffs' lengthy footnote [Doc. 13 at 27-29], **none** establishes a common law cause of action for penalty.[10]   This Court should reject plaintiffs' attempt to re-plead in their brief a claim for breach of the implied covenant of good faith, which is completely missing from the amended complaint.   Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001).

## V. PLAINTIFFS DO NOT ALLEGE AN UNJUST ENRICHMENT CLAIM

Plaintiffs argue that they are entitled to restitutionary recovery of CCC's late fees.   [Doc. 13 at 30].   As this Court has recognized, "'unjust

---

[10]   Only two cases even involved a cause of action for penalty, and they are inapposite here because the claim was created by statute, not founded at common law.   See Garrett v. Coast & Southern Fed. S. & L. Ass'n, 511 P.2d 1197 (Cal. 1973); Beasley v. Wells Fargo Bank, N.A., 1 Cal.Rptr.2d 446 (Cal. Ct. App. 1991).

enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability.'" Emergency Phys. of St. Clare's, LLC v. Proassurance Corp., 2010 WL 3311861 at *5 n.2 (D.N.J. Aug. 19, 2010) (quoting Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J. Super. 468, 478 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div.), certif. den., 138 N.J. 269 (1994)).  "A quasi-contract claim cannot exist when there is an *enforceable* agreement between the parties." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F.Supp.2d 729, 733-734 (D.N.J. 2008) (italics in original); see Suburban Transfer Serv., Inc. v. Beech Hldgs., Inc., 716 F.2d 220, 226 (3d Cir. 1983) ("Quasi-contract liability will not be imposed, however, if an express contract exists concerning the identical subject matter.").  Plaintiffs have pled an express contract for plaintiffs' purchase of bottled water [see Doc. 11 (¶¶6, 16, 20, 39)], which is governed by the Uniform Commercial Code, N.J.S.A. 12A:2-102, *et seq.* ("UCC").  Plaintiffs do not plead that their unjust enrichment claim is sanctioned by the UCC and, therefore, it fails.

## CONCLUSION

For these reasons, plaintiffs' first amended complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

ORLOFF, LOWENBACH, STIFELMAN &
SIEGEL, P.A.
Attorneys for Defendant

By:  */s/ Jeffrey M. Garrod*
JEFFREY M. GARROD

Dated:  January 25, 2012

# EXHIBIT  A

Westlaw.

Slip Copy, 2011 WL 6372617 (D.N.J.)
(Cite as: 2011 WL 6372617 (D.N.J.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Philip **GREEN**, on behalf of himself and all others
similarly situated, Plaintiffs,
v.
**GREEN** MOUNTAIN COFFEE ROASTERS,
INC., and Keurig, Inc., Defendants.

Civil Action No. 11–2067 (SDW)(MCA).
Dec. 20, 2011.

Michelle C. Zolnoski, Bernstein Liebhard LLP, New York, NY, Solomon Rubin, Law Offices of Jan Meyer & Associates PC, Second Floor, Teaneck, NJ, for Plaintiffs.

Christopher J. Dalton, Buchanan, Ingersoll & Rooney, PC, Newark, NJ, Landon Young Jones, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, for Defendants.

**OPINION**

WIGENTON, District Judge.

*1 Before the Court is Green Mountain Coffee Roasters, Inc., and Keurig, Inc.'s, (collectively "Defendants") Motion to Dismiss Plaintiff Philip Green's ("Plaintiff" or "Green") individual claims and class action allegations pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted ("Motions"). This Court has jurisdiction pursuant to 28 U .S.C. § 1332(d). Venue is proper in this District pursuant to 28 U.S .C. § 1391. These Motions are decided without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons stated below, this Court grants Defendants' Motions.

**FACTUAL AND PROCEDURAL BACK-GROUND**

Defendants are "in the specialty coffee and coffee maker businesses." (Compl.¶ 12.) They manufacture "single-cup brewers, accessories and coffee, tea, cocoa and other beverages in K–Cup portion packs." (*Id.* ¶ 16.) In addition to manufacturing, Defendants also market and sell their products "in domestic wholesale and retail channels, [supermarkets], and directly to consumers." (*Id.* ¶¶ 15, 21.) At the heart of this lawsuit are the following single-cup brewing systems Defendants manufacture and sell: Keurig® Platinum Brewing System (model series B70), Keurig Special Edition Brewing System (model series B60), Keurig Elite Brewing System (model series B40), Keurig B155 Brewing System, Keurig OfficePRO Brewing System, Keurig MINI Plus Brewing System (model series B31), Keurig B130 In–Room Brewing System, Keurig B150 Brewing System, Keurig B140 Brewing System, Breville Brewing System with Keurig Brewed® Technology, Cuisinart® Brewing System with Keurig Brewed Technology, Mr. Coffee® Brewing System with Keurig Brewed Technology, and the Keurig B200 Brewing System (collectively the "Keurig Brewing Systems"). (*Id.* ¶ 1.)

According to Green, Defendants advertised on their websites and the brewers' packaging that "one K–Cup would brew a programmed quantity of coffee." (*Id.* ¶ 8; *see also id.* ¶¶ 22–27 .) Based on these representations, Plaintiff asserts that he purchased a Keurig® Platinum Brewing System (model series B70) in or around January 2011. (*Id.* ¶ 8.) However, Green maintains that his machine failed to brew the programmed amounts of K–Cup® coffee within a few weeks of use. (*Id.*) Plaintiff asserts that the machines had "defective components, including defective pumps." (*Id.* ¶ 28.) As a result, the machines failed and brewed less than the specified amount. (*Id.*) Furthermore, this defect allegedly caused "consumers to use additional K–Cups® to brew a single beverage." (*Id.* ¶ 2.) Green submits that other consumers complained to Defendants about the defective machines and Defendants were aware that the brewing machines

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6372617 (D.N.J.)
**(Cite as: 2011 WL 6372617 (D.N.J.))**

were defective. (*Id.* ¶¶ 29, 45.)

Defendants provide a one-year no-cost limited warranty for the Keurig Brewing Systems that allows Defendants, at their option, to repair or replace the machine. The warranty provides in relevant part:

> **\*2** Keurig warrants that your Keurig Home Brewer will be free of defects in materials or workmanship under normal home use for one year from the date of purchase. Keurig will, at its option, repair or replace the Brewer without charge upon its receipt of proof of the date of purchase. If a replacement Brewer is necessary to service this warranty, the replacement Brewer may be new or reconditioned. If a replacement Brewer is sent, it will carry a One Year Warranty from the date of shipment. Keurig will cover all shipping costs for authorized returns.

(Defs.' Br. Ex. A.) [FN1]

> FN1. Although the general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings [,] ... an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997) (alteration in original) (internal quotation marks and citations omitted).

Nonetheless, Plaintiff has not taken advantage of the warranty. According to Green, other consumers who were serviced under the warranty had their machines "replaced with unused, but equally defective" machines. (Compl.¶ 4.)

Consequently, on April 11, 2011, Green initiated this action on behalf of himself and others in the State of New Jersey who "purchased or received" Keurig Brewing Systems from February 18,

2008 to the present. (*Id.* ¶ 58, Pl.'s Opp'n Br. 1 n. 2.) [FN2] Plaintiff maintains that Defendants' actions are in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8–1, *et seq.,* and constitute a breach of implied warranty and unjust enrichment.

> FN2. Initially, Green sought a nationwide class certification; however, he narrowed the class to New Jersey purchasers following the Supreme Court's decision in *Wal–Mart Stores, Inc. v. Dukes,* ——U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). In light of Plaintiff's limitation of the definition of the putative class to "purchasers only from the State of New Jersey," (Pl.'s Opp'n Br. 1 n. 2), this Court will not engage in a choice of law analysis.

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed.R.Civ.P. 8(a) (2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief"). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must " ' accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' " *Phillips,* 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) ( *"Twombly"* ). If the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6372617 (D.N.J.)
(Cite as: 2011 WL 6372617 (D.N.J.))

"well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief as required by Rule 8(a)(2). *Iqbal,* 129 S.Ct. at 1950 (internal quotation marks omitted). According to the Supreme Court in *Twombly,* "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[or her] 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U .S. at 555 (internal citations omitted). Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id The Third Circuit summarized the *Twombly* pleading standard as follows: " 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556).

**\*3** Moreover, Fed.R.Civ.P. 9(b)'s pleading requirements apply to CFA claims. *See, eg., Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir.2007). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).

## DISCUSSION

### 1. Standing

Pursuant to Article III of the United States Constitution, the Court may exercise jurisdiction only where there is an actual case or controversy. *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Standing is a "threshold question," *Warm v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and "[t]he party invoking federal jurisdiction bears the burden" of proof. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To meet this burden, "the irre-

ducible constitutional minimum of standing" involving three elements must be established. *Id.* at 560.

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (alterations in original) (internal quotation marks and citations omitted).

Although all three elements have to be met, "the injury-in-fact element is often determinative." *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 138 (3d Cir.2009). Most importantly, "the injury must affect the plaintiff in a personal and individual way." *Luan,* 504 U.S. at 561 n. 1. Additionally, "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (citations omitted). Moreover, " '[t]he standing inquiry does not change in the context of a putative class action.... [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.' " *Koronthaly v. L'Oreal USA, Inc.,* Civ. A. No. 07–5588, 2008 U.S. Dist. LEXIS 59024, at \*13, 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd,* 374 F. App'x 257 (3d Cir.2010) (quoting *In re Franklin Mut. Funds Litigation,* 388 F.Supp.2d 451, 461 (D.N.J.2005)). "[A] plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.' " *Lieberson v. Johnson & Johnson Con-*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6372617 (D.N.J.)
**(Cite as: 2011 WL 6372617 (D.N.J.))**

*sumer Cos.*, Civ. A. No. 10–6196, 2011 U.S. Dist. LEXIS 107596, at *14, 2011 WL 4414214 (D.N.J. Sept. 21, 2011) (quoting *Lewis v. Casey,* 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

*4 In this case, Green alleges that he purchased and used the Keurig® Platinum Brewing System (model series B70). (Compl. ¶ 8 .) Nevertheless, he seeks to represent all individuals in New Jersey who "purchased or received" Keurig Brewing Systems. ( *Id.* ¶ 58; Pl.'s Opp'n Br. 1 n. 2.) Plaintiff does not have "standing to pursue a claim that products [ ]he neither purchased nor used did not work as advertised." *Lieberson,* 2011 U.S. Dist. LEXIS 107596, at *13–14, 2011 WL 4414214. Consequently, the Court will only consider Plaintiff's allegations pertaining to the model series B70. Green's claims relating to the other brewing systems are dismissed.

**2. Individual Claims**

a. CFA

The CFA, which affords private citizens with a cause of action under limited circumstances, provides in relevant part: "Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act ... may bring an action ... in any court of competent jurisdiction." N.J. Stat. Ann. § 56:8–19. To state a private cause of action under the CFA, "a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering–Plough Corp.,* 367 N.J.Super. 8, 12–13, 842 A.2d 174 (App.Div.2003), *certif. denied,* 178 N.J. 249, 837 A.2d 1092 (2003) (citing *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 24, 647 A.2d 454 (1994)). There are three categories of unlawful conduct under the CFA: "(1) affirmative acts, *i.e.,* misrepresentations; (2) omissions; and (3) regulatory

violations." *Hughes v. Pana sonic Consumer Elecs. Co.,* Civ. A. No. 10–846, 2011 U.S. Dist. LEXIS 79504, at *31, 2011 WL 2976839 (D.N.J. July 21, 2011) (citing *Solo v. Bed Bath & Beyond, Inc.,* Civ. No. 06–1908, 2007 U.S. Dist. LEXIS 31088, at *2, 2007 WL 1237825 (D.N.J. Apr. 26, 2007); *Cox,* 138 N.J. at 17, 647 A.2d 454).

Green argues that Defendants' conduct was unlawful because they misrepresented the amount of beverage the machine would brew.[FN3] It appears that Plaintiff has adequately pled unlawful conduct. However, Defendants maintain that even if their conduct was unlawful, Plaintiff has not sufficiently pled ascertainable loss. This Court agrees.

> FN3. Plaintiff states that he is not pursing an omission claim. (Pl .'s Opp'n Br. 9 n. 9.) Consequently, he did not need to plead intent. *Cox,* 138 N.J. at 18, 647 A.2d 454.

In a misrepresentation case, a plaintiff may show ascertainable loss by "either out-of-pocket loss or a demonstration of loss in value." *Thiedemann v. Mercedes–Benz USA, LLC,* 183 N.J. 234, 248, 872 A.2d 783 (2005) (citing *Furst v. Einstein Moomjy, Inc.,* 182 N.J. 1, 13, 860 A.2d 435 (2004)). An actionable loss is not "hypothetical or illusory." *Thiedemann,* 183 N.J. at 248, 872 A.2d 783. In this case, Green has not alleged that he has made a claim for warranty repair or replacement of his machine. As the Thiedemann Court stated, "the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties. The defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate 'loss' that the CFA expressly requires for a private claim under the CFA." *Thiedemann,* 183 N.J. at 251, 872 A.2d 783; *see also Smajlaj v. Campbell Soup Co.,* 782 F.Supp.2d 84, 99 (D.N.J.2011) ("A consumer who expects a [product] that never requires resort to its comprehensive warranty ... has not experienced a loss when that expectation is not met.") (citations omitted); *Larkey v. Bless,* No. A–1620–10T2, 2011 N.J.Super. Unpub. LEXIS 2681, at *12, 2011 WL

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6372617 (D.N.J.)
(Cite as: 2011 WL 6372617 (D.N.J.))

5082219 (App.Div. Oct.27, 2011) (concluding that plaintiff had no ascertainable loss because the defect was addressed by a warranty). *Cf. Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 559–60, 964 A.2d 741 (2009) (holding that a consumer need not make a pre-suit demand for a refund before filing a CFA claim; but distinguishing *Thiedemann* and noting that the present case did not involve a defect that could be remedied through a warranty or other alternate form of relief). Because Plaintiff has not availed himself of Defendants' warranty he cannot allege that the warranty does not address the defect in his machine.

\*5 Furthermore, this Court finds unpersuasive Plaintiff's argument that Defendants' warranty did not address the defects in the brewers because other consumers reported that their replaced or repaired brewers were equally defective. (Compl. ¶¶ 33–44; Pl.'s Opp'n Br. 20.) "[A]llegations regarding the experience of members of the putative class, in general, cannot fulfill the requirement of pleading with adequate specificity." *Luppino v. Mercedes–Benz USA, LLC,* Civ. No. 09–5582, 2010 U.S. Dist. LEXIS 83584, at \*14 (D .N.J. Aug. 13, 2010); *see also Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 659 (3d Cir.1998) ("Until the putative class is certified, the action is one between ... [the plaintiff] and the defendants. Accordingly the ... Complaint must be evaluated as to the[ ] particular plaintiff[ ].").

Nevertheless, Plaintiff, relying on *Asp v. Toshiba Am. Consumer Prods., LLC,* 616 F.Supp.2d 721 (S.D.Ohio 2008), maintains that he is not required to avail himself of Defendants' warranty prior to filing suit. (Pl.'s Opp'n Br. 15.) This Court finds the Asp Court's interpretation of *Thiedemann* unpersuasive and at odds with the Thiedemann Court's reasoning. In *Asp,* the plaintiff filed a class action against the defendant, alleging that a digital video recorder ("DVR") he purchased from a retailer malfunctioned within days of purchase. The plaintiff's DVR came with a limited warranty that required the defendant to repair or re-

place the defective DVR at no cost to the consumer. Rather than take advantage of the limited warranty, the plaintiff brought suit, claiming that the defendant violated the CFA. *Asp,* 616 F.Supp.2d at 724–26. The defendant, relying on *Thiedemann,* maintained that the plaintiff failed to allege an ascertainable loss because he failed to take advantage of the limited warranty. The Asp Court found that *Thiedemann* only applied to situations where "the defect had been fixed, replaced, or otherwise 'addressed' " by the warranty in question. *Id.* at 737. Consequently, the court held that a plaintiff may have an ascertainable loss "without first giving the seller an opportunity to repair or replace under a limited warranty." *Id.* at 738.

However, there is no such limiting language in *Thiedemann.* A careful reading of *Thiedemann* suggests that merchants should be given the opportunity to repair or replace a defect. For instance, the court acknowledged that the defendant's argument that the "CFA implicitly encourages merchants ... to initiate pro-consumer warranty programs by rewarding those companies with the benefit of avoiding CFA exposure for claims brought by individuals who do not incur an out-of-pocket loss" was the "better ... argument [ ]." *Thiedemann,* 183 N.J. at 250–51, 872 A.2d 783. Additionally, as the court stated, "[t]he mere fact that [a] ... defect arises does not establish, in and of itself, an actual and ascertainable loss to the [ ] purchaser. Indeed, the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties." *Id.* at 251, 872 A.2d 783. According to the New Jersey Supreme Court, an ascertainable loss is roughly equivalent to "any lost 'benefit of [the] bargain.' " *Bosland,* 197 N.J. at 558, 964 A.2d 741 (alteration in original) (quoting *Furst,* 182 N.J. at 11–13, 860 A.2d 435). Consequently, there is no lost benefit of the bargain in this case if a warranty is provided that addresses the defect in question. [FN4]

FN4. Plaintiff also asserts that he has suffered an ascertainable loss because he

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6372617 (D.N.J.)
(Cite as: 2011 WL 6372617 (D.N.J.))

had to use an additional K–Cup® to brew a single cup. (Compl.¶ 2.) This Court does not address whether Plaintiff's use of an additional cup qualifies as a predicate loss under the CFA because he has not given Defendants the opportunity to cure the alleged defect.

*6 Moreover, Plaintiff has not sufficiently pled loss in value. "Under the CFA, Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered." *Solo,* 2007 U.S. Dist. LEXIS 31088, at *10, 2007 WL 1237825 (citing Cox, 138 N.J. at 21, 647 A.2d 454; *Dabush v. Mercedes–Benz USA, LLC,* 378 N.J.Super. 105, 116, 874 A.2d 1110 (App.Div.2005)). Plaintiff broadly asserts that he has suffered a loss because "[e]ach brewer failed to perform its advertised purpose and caused purchasers to suffer a complete loss of value of the product." (Pl.'s Opp'n Br. 12.) Green fails to allege how much he paid for his brewer and how much other comparable brewers manufactured by Defendants' competitors cost at the time of purchase. *See Hemy v. Perdue Farms, Inc.,* Civ. A. No. 11–888, 2011 U.S. Dist. LEXIS 137923, *53–54, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) (concluding that plaintiffs have failed to allege ascertainable loss because "they do not set out the difference in value between the promised product ... and the actual product received"). Stated differently, "Plaintiff fail[ed] to specifically allege that what he did receive[ ] was of lesser value than what was promised...." *Solo,* 2007 U.S. Dist. LEXIS 31088, at *10, 2007 WL 1237825. Furthermore, Green has not suffered a diminution in value because the defective brewer would have been repaired or replaced with a new brewer which would have had its own one-year warranty. *See Perkins v. DaimlerChrysler Corp.,* 383 N.J.Super. 99, 112, 890 A.2d 997 (App.Div.2006). Consequently, Plaintiff has not sufficiently pled an ascertainable loss.[FN5]

FN5. Because this Court concludes that Plaintiff has failed to sufficiently allege an

ascertainable loss, it will not determine if the other elements required to state a private cause of action under the CFA have been sufficiently pled.

b. Breach of Implied Warranty of Merchantability [FN6]

FN6. Plaintiff alleges breach implied warranty of merchantability and fitness. (Compl.¶ 71.) However, neither Defendants' nor Plaintiff's briefs address the implied warranty of fitness claim.

New Jersey has adopted the Uniform Commercial Code to govern commercial transactions involving the purchase and sale of goods. *Noble v. Porsche Cars N. Am., Inc.,* 694 F.Supp.2d 333, 337 n. 3 (D.N.J.2010) (citing N.J. Stat. Ann. § 12A:2–102, *et seq.*). "Merchantability requires that a product conform to its ordinary and intended use." *Hughes,* 2011 U.S. Dist. LEXIS 79504, at *60, 2011 WL 2976839 (internal quotation marks and citation omitted). The warranty "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Lieberson,* 2011 U.S. Dist. LEXIS 107596, at *29, 2011 WL 4414214 (quoting *Hughes,* 2011 U.S. Dist. LEXIS 79504, at *63, 2011 WL 2976839) (internal quotation marks omitted). In other words, the warranty requires "that the article sold should be of the general kind described and reasonably fit for the *general purpose* for which it should have been sold." *Adams v. Peter Tramontin Motor Sales, Inc.,* 42 N.J.Super. 313, 321, 126 A.2d 358 (App.Div.1956) (emphasis added); *see also* N.J. Stat. Ann. § 12A:2–314(2)(c) (describing merchantable goods as those that are "fit for the ordinary purposes for which such goods are used").

Here, the "general" purpose of the brewers was to brew beverages. Although Defendants may have advertised that the machines would brew a specific amount of beverage, that alone does not transform the "general" purpose. *See Lieberson,* 2011 U.S.

Slip Copy, 2011 WL 6372617 (D.N.J.)
**(Cite as: 2011 WL 6372617 (D.N.J.))**

Dist. LEXIS 107596, at *30–31, 2011 WL 4414214 (concluding that a product's general purpose cannot be altered by advertising alone). Green has not alleged that his machine would not brew coffee or that it was inoperable. He simply alleges that his "brewer failed to brew correct amounts of [ ] coffee." (Compl.¶ 8.) The Complaint is also devoid of any allegation that Plaintiff can no longer use his brewer. Also, Plaintiff cannot rely on the claims of other consumers to meet the pleading requirement. *See Luppino,* 2010 U .S. Dist. LEXIS 83584, at *14. Therefore, Green has not sufficiently alleged that his brewer was unfit for its ordinary purpose of brewing beverages at the time of purchase. *See Hughes,* 2011 U.S. Dist. LEXIS 79504, at *64–65, 2011 WL 2976839 (dismissing a claim for breach of implied warranty of merchantability because although the plaintiffs alleged that their products were defective, they did not assert that their products were "inoperable or otherwise [ ] not in working condition.").[FN7]

> FN7. Because this Court concludes that Plaintiff has not adequately pled that his brewer was not merchantable at the time of purchase, it does not decide if Plaintiff provided adequate notice to Defendants.

**c. Unjust Enrichment**

*7 To state a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Iliadis v. Wal–Mart Stores, Inc.,* 191 N.J. 88, 110, 922 A.2d 710 (2007) (quoting *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 554, 641 A.2d 519 (1994)) (internal quotation marks omitted). Essential to an unjust enrichment claim is a direct relationship between the plaintiff purchaser and the defendant or "a mistake on the part of the person conferring the benefit." *Hughes,* 2011 U.S. Dist. LEXIS 79504, at *78, 2011 WL 2976839 (quoting *Fasching v. Kallinger,* 211 N.J.Super. 26, 36, 510 A.2d 694 (App.Div.1986)). This is because "[w]hen consumers purchase a product from a third party, they confer a benefit on

that third party, not on the manufacturer." *Synder v. Farnam Cos.,* Civ. No. 10–1391, 2011 U .S. Dist. LEXIS 56472, at * 26, 2011 WL 2112500 (D.N.J. May 26, 2011).

This Court finds that Green has insufficiently pled a claim for unjust enrichment. Plaintiff alleges that he purchased a brewer. Yet, he fails to allege if he purchased the brewer directly from Defendants. Also, Green does not allege that he was mistaken in conferring a benefit on Defendants. Absent an allegation of a direct relationship or a mistake, Plaintiff has insufficiently pled a claim for unjust enrichment. *See Cooper v. Samsung Elecs. Am., Inc.,* Civ. A. No. 07–3853, 2008 U.S. Dist. LEXIS 75810, at *30–31, 2008 WL 4513924 (D.N.J. Sept. 30, 2008), *aff'd,* 374 F. App'x 250 (3d Cir.2010) (concluding that the plaintiff had insufficiently pled a claim for unjust enrichment because he did not allege that he purchased the products directly from the defendant).

**3. Class Allegations**

Even though Plaintiff has yet to move for class certification, Defendants contend that the class allegations should be dismissed. Plaintiff argues that the Court should deny Defendants' motion because it is premature. Nevertheless, a court may strike class action allegations "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Clark v. McDonald's Corp.,* 213 F.R.D. 198, 205 n. 3 (D.N.J.2003) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). This Court concludes that Plaintiff cannot represent the class because he does not meet the predominance requirement set forth in Fed.R.Civ.P. 23(a).

Green, the proposed class representative, must satisfy all four requirements of Fed.R.Civ.P. 23(a). *Innovative Physical Therapy. Inc. v. Metlife Auto & Home,* Civ. A. No. 07–5446, 2008 U.S. Dist. LEXIS 69377, at *15–16, 2008 WL 4067316 (D.N.J. Aug. 26, 2008). These four requirements are:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6372617 (D.N.J.)
**(Cite as: 2011 WL 6372617 (D.N.J.))**

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*8 Fed.R.Civ.P. 23(a). Moreover, Plaintiff bears the burden of "establish[ing] that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994).

In this case, Green is seeking certification under Rule 23(b)(3). (Compl.¶¶ 58, 62–63.) There are two requirements under this rule: predominance and superiority. *See* Fed.R.Civ.P. 23(b) (3); *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 310 (3d Cir.2008). The "Court[ ] must undertake a 'rigorous analysis' to ensure that the putative class and its proposed representative satisfy each of the prerequisites to class certification." *Innovative Physical Therapy, Inc.,* 2008 U.S. Dist. LEXIS 69377, *16, 2008 WL 4067316 (citing *Falcon,* 457 U.S. at 161).

*Common Questions of Fact do not Predominate*
"For common questions of fact to predominate, they must be 'both numerically and qualitatively substantial in relation to the issues peculiar to individual class members.' " *Mahtani v. Wyeth,* Civ. A. No. 08–6255, 2011 U.S. Dist. LEXIS 70689, at *18, 2011 WL 2609857 (D.N.J. June 30, 2011) (quoting *In re Mercedes–Benz Antitrust Litig.,* 213 F.R.D. 180, 186 (D.N.J.2003)). According to the Third Circuit,

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a),

requiring more than a common claim. Issues common to the class must predominate over individual issues .... Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

*In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 310–11 (alteration in original) (internal quotation marks and citations omitted).

1. CFA
Green's primary allegation is that Defendants misrepresented that the machines would brew a specific amount of beverage. (Compl.¶ 2.) In order to assert a claim under the CFA, the putative class will have to establish their model series B70 brewers were defective. "Other courts in this District have found that proving a defect is a highly individualized inquiry unsuitable for class treatment." *Mahtani,* 2011 U.S. Dist. LEXIS 70689, at *20, 2011 WL 2609857 (citing *Laney v. Am. Standard Cos.,* Civ. A. No., 07–3991, 2010 U.S. Dist. LEXIS 100129, 2010 WL 3810637 (D.N.J. Sept. 23, 2010); *Payne v. FujiFilm,* Civ. A. No., 07–385, 2010 U.S. Dist. LEXIS 52808, 2010 WL 2342388 (D.N.J. May. 28, 2010); *Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D.N.J.1998)). In fact, the Complaint does not allege that all individuals in New Jersey who purchased the Keurig Brewing Systems have experienced the defect. Plaintiff actually acknowledges that there are members in the putative class who have not yet "suffered pump failure." (Compl.¶ 67.) Consequently, the putative class includes individuals who do not presently have a claim against Defendants. Therefore Court concludes that common issues of fact do not predominate with the CFA claim.

2. Breach of Implied Warranty of Merchantability

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

Slip Copy, 2011 WL 6372617 (D.N.J.)
**(Cite as: 2011 WL 6372617 (D.N.J.))**

**\*9** Proving that Defendants breached the implied warranty of merchantability will also require this Court to perform an individualized inquiry. Not every member of the putative class has experienced a defect with the model series B70. Even if the purported defect has manifested in all of the brewers purchased within the class period, the Court will have to make individual inquiries as to the cause and extent of the defect. As a result, this claim is unsuitable for class treatment.

3. Unjust Enrichment Claim

Individual issues predominate with this claim for the same reasons as stated above. Not all members of the putative class have experienced a defect with the model series B70. Therefore, those individuals who have not experienced the alleged defect received the benefit of the bargain. Furthermore, all of the members of the putative class did not purchase their machines directly from Defendants. Also, the putative class includes individuals who "received" the model series B70 brewers. (*Id.* ¶ 58; Pl.'s Opp'n Br. 1 n. 2.) Hence, some of the class members do not have a direct relationship with Defendants. *See Cooper,* 2008 U.S. Dist. LEXIS 75810, at \*29–31, 2008 WL 4513924 (noting that a direct relationship is a pre-requisite for an unjust enrichment claim). Proving unjust enrichment in this instance will require this Court to undergo an individualized inquiry into the circumstances of each class member. As a result, this claim does not lend itself to class treatment.

**CONCLUSION**

For the reasons stated above, Defendants' Motion is GRANTED.

D.N.J.,2011.
Green v. Green Mountain Coffee Roasters, Inc.
Slip Copy, 2011 WL 6372617 (D.N.J.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.