**LAW OFFICES OF STEVEN L. WITTELS, P.C.**
Steven L. Wittels
J. Burkett McInturff
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

-------------------------------------------------------x

| | | |
|---|---|---|
| GARY CISER, on behalf of himself and<br>all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | **SECOND AMENDED COMPLAINT**<br>**(Civil Action)** |
| - against - | : | |
| NESTLE WATERS NORTH<br>AMERICA INC., | : | Civil Action No. 11-cv-5031 (WJM) |
| | : | |
| Defendant. | : | *JURY TRIAL DEMANDED* |

-------------------------------------------------------x

Plaintiff GARY CISER ("Mr. Ciser" or "Plaintiff") brings this Second Amended Complaint by his counsel the Law Offices of Steven L. Wittels, P.C. in Mr. Ciser's individual capacity and on behalf of the class of persons defined below, and alleges for his complaint upon knowledge as to his own acts and otherwise upon information and belief, as follows:

## OVERVIEW OF NESTLE WATERS/POLAND SPRING'S
## <u>WRONGFUL ACTS AND BASIS OF THIS ACTION</u>

1. This lawsuit arises from oppressive late fees imposed by Defendant NESTLE WATERS NORTH AMERICA INC. through its bottled water divisions including Poland Spring Brand 100% Natural Spring Water, Arrowhead Brand 100% Mountain Spring Water, and Deer Park Brand 100% Natural Spring Water (collectively "Nestle Waters" unless otherwise specified, or "the Company," or "the Water Company").  Nestle Waters claims to be the largest bottled water company in the United States, with 41% of the bottled water market.

2. The Water Company charges its customers exorbitant and illegal late-fee penalties on bottled water deliveries.  These late fee penalties – some ***as high as 132% of the overdue amount*** – are so stratospheric they smack of usury.

3. Defendant Nestle Waters harms its customers by imposing the greater of an excessive late charge of typically $15 per month (up to $20) on untimely payments, or interest of 1.5% per month on any overdue amount until paid.  The Company assesses the late fee no matter how large the late fee percentage is relative to the overdue payment, or how many days overdue the payment might be.

4. Under the law in New Jersey (and virtually all states), an "unreasonably large liquidated damages" provision in a contract – here the "late fee" – is "unenforceable on grounds of public policy" if found to be a penalty.  <u>Ciser v Nestle Waters of North America Inc</u>., 2013 U.S. Dist. LEXIS 12927 (D. NJ. Jan. 31, 2013, Martini, J.).  Under the law of New Jersey as set forth in <u>MetLife v Capital Fin. Corp v Washington Ave. Assocs. L.P.,</u> 159 NJ 484 (1999) and its progeny, Defendant Nestle Waters' late fee constitutes a penalty if it bears no reasonable

relationship to the anticipated or actual costs the company incurs as a result of a customer's untimely monthly payment, and/or is far beyond the boundaries of late fees customarily charged by other bottled water and similar-type delivery companies.

5. The anticipated or actual costs that Defendant Nestle Waters might incur as a result of untimely payments consist of two components: (a) its own borrowing costs for the time Nestle has to carry the overdue balance until paid, and (b) any incremental administrative costs the Company bears for its extra effort made to collect the late payment, e.g. mailing collection letters (if any) to past due customers.

6. As detailed below in this Second Amended Complaint, there are five reasons which Plaintiff is presently aware of as to why Defendant Nestle Waters' $15 fixed late fee bears no reasonable relationship to the anticipated or actual costs its incurs as a result of an untimely payments:

(i) First, based on Nestle Waters' own published financing costs, the water company typically incurs less than 25 cents in interest carrying cost for the relatively short time period between the due date and the date the overdue payment is actually received;

(ii) Defendant Nestle has virtually no incremental administrative costs from overdue payments as, upon information and belief, during the 2006-09 period when the Company imposed late fees on Mr. Ciser, the Company took no visible steps to collect overdue payments; instead, Nestle simply included a computerized "reminder" notice printed on the standard bill which it sent in the ordinary course of operations the following month.

      (iii)    Upon information and belief, at some point after 2009, Defendant Nestle began sending separate reminder letters about overdue payments to customers in addition to including the "reminder" language included on the bills. The incremental cost to the company of these reminder letters, however, is also minimal, and upon information and belief, amounts to approximately $1 or less.

      (iv)    When considered together, the financing costs and any incremental costs incurred by Defendant Nestle are barely over $1 (if that), and thus vastly below the $15 sum the company charges for its late fee.

      (v)    Upon information and belief, the Company also failed to undertake any type of study or analysis to determine what its anticipated costs would be from a late payment. Thus, the Company's $15 charge is arbitrary and intended as a penalty to coerce payment, rather than to reimburse the company for estimated or actual costs of a late payment.

7.  In this Second Amended Complaint, Plaintiff also sets forth a survey of late fees charged by other bottled water and delivery companies in the country which reveals that Nestle Waters' is not only the highest late fee found, but is higher in most cases by 90% more.

8.  Plaintiff's allegations as to the excessiveness of Defendants' late fee on Plaintiff and the proposed class of Nestle Water customers finds further support from a renowned scholar at the New York University Stern School of Business, Research Professor of Accounting, Eli Bartov, PhD., C.P.A., who has experience in the field of cost accounting. Professor Bartov has considered Defendant Nestle's late fee policy in light of its anticipated and actual costs, and

preliminarily determined that the fee is grossly excessive when considered in light of its actual known costs.

9.  Plaintiff maintains that Defendant Nestle Waters uses the punitive late fee to siphon extra money from its customers, generate profits, and enrich itself at the expense of unsuspecting consumers.  Nestle's practice of charging for and keeping late fees that are grossly excessive constitutes a monetary punishment of many of the Company's customers.

10. Defendant Nestle Waters' exaction from its customers of a punitive late charge, constitutes a classic consumer fraud, and violates both the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et. seq., and the common law of New Jersey and all other States where the Company does business.

11. Plaintiff Mr. Ciser brings this class action under Fed. R. Civ. P. 23 to recover damages for himself and the class of Nestle Waters' customers who have suffered damages from the Company's imposition of an excessive late-payment penalty.  Plaintiff seeks to represent all Nestle Waters' customers in New Jersey and other states who were assessed and/or paid a late fee of $15 or more.

12. Defendant Nestle Waters has filled its cash vaults by billing inordinate late charges and has thereby damaged Plaintiff and the Class.  Only a class action will provide the class with any possibility of relief against Nestle Waters.  Plaintiff and the Class are therefore entitled to class-wide remedy.

## JURISDICTION AND VENUE

13. This Court has federal subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 as

   amended by the Class Action Fairness Act of 2005 for the following reasons:

       (i)      the members of the proposed Plaintiff Class number in the thousands;

       (ii)     the amount in controversy – which may be calculated by aggregating the claims of the Class Members – exceeds five million dollars ($5,000,000);

       (iii)    there is diversity of citizenship between any one member of the Class and the Defendant Nestle Waters North America Inc.  Plaintiff Gary Ciser is a resident of New Jersey, while Defendant is headquartered in and is a resident of Connecticut.

       (iv)    Defendant is subject to personal jurisdiction in New Jersey.  This lawsuit arises from the Defendant's wrongful conduct in New Jersey and Nestle Waters conducts business within the State.

14. Venue is properly placed in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2).  A

   substantial part of the events and the omissions giving rise to Plaintiff's claims occurred in

   this district.

## THE PARTIES

15. At all times relevant to this action, Plaintiff Gary Ciser was the sole owner and principal of

   Ciser Computer Consulting.  Defendant Nestle Waters North America Inc. makes Poland Spring

   water deliveries to Mr. Ciser and his wife Diane Ciser at their home in Westwood, N.J.  Ciser

   Computer Consulting has been the entity billed for water deliveries by Nestle Waters (Poland

   Spring), however Mr. Ciser and his wife, and not Ciser Computer Consulting, personally pay

   the Nestle Waters invoices.

16. Upon information and belief, Defendant Nestle Waters North America Inc. is a foreign

   corporation headquartered in Greenwich, Connecticut, is licensed to do business in New Jersey,

and transacts business in this State.

17. Poland Spring Water Company is a division of Defendant Nestle Waters North America Inc. that provides bottled water products to homes and businesses.

18. According to its website, Defendant Nestle Waters, through its Poland Spring, Perrier, Arrowhead Mountain, and Deer Park divisions, as well as its other bottled bottle water brands, has become the largest bottled water company in the United States, and owns seven of the top ten bottled water brands.

## **FACTUAL ALLEGATIONS**

### **(i)    Plaintiff Mr. Ciser's Water Deliveries**

19. Plaintiff Mr. Gary Ciser has been a customer of Defendant Nestle Waters since 2005, having the company deliver its Poland Spring brand of water to his home in northern New Jersey. Over the course of those years, Mr. Ciser has most often paid his water bills in a timely fashion.

20. This dispute arises from the instances when Plaintiff's monthly payment was overdue and Defendant imposed its excessive $15 late fee.  Upon information and belief, Defendant imposed the same exorbitant late fee on many thousands, if not hundreds of thousands, of its delivery customers.

### **(ii)    Defendant Nestle Waters' Late Fee Policy**

21. Nestle Waters provides conflicting and confusing information to customers about its late fee policies.    Defendant Nestle Waters' website states:

> If Customer does not pay any charge within thirty (30) days of the invoice date, Customer will pay Company the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice

7

date until paid.

22. The Nestle Waters' website is in conflict with the late fee policy on its invoices, which do not specify an interest term component on late payments. The reverse side of Defendant's invoices state:

> Past due invoices (not paid within 30 days of billing date) may be assessed a late fee as allowed by law not to exceed $20 per month. Additional third party collection/attorney expenses may be assessed at a rate not to exceed 100% of the unpaid balance or the maximum allowed by law.

23. Upon information and belief, if a customer's payment is overdue, Defendant assesses a flat late fee of $15, regardless of how much is owed or how many days overdue the payment is.

24. The water company is aware that its late fee likely subverts the maximum late fee charges allowed by law, and further acknowledges on its website that:

> If the late fee or interest rate exceeds the maximum rate allowed by law, the late charge will be equal to such maximum rate.

**(iii) Nestle's Late Fees to Plaintiff Ranged from
28% to 132% of the Overdue Amount**

25. As illustrated in the following chart, Nestle Waters charged Plaintiff Mr. Ciser a $15 late fee on five occasions between 2006 and 2009, regardless of the amount owed.[1]

---

[1] This updated late fee chart amends and corrects the previous chart included in the First Amended Complaint, which provided the basis for the Court's January 31, 2013 decision. The updated chart reveals that the effective late fee percentages Nestle Waters charged Plaintiff are massively higher than initially calculated.

*26. __Ciser Late Fee Chart__*

| Invoice # | Invoice Date | Due Date | Date Bill Paid | Days Overdue | Amount Owed | Late Charge | Late Fee Percentage |
|---|---|---|---|---|---|---|---|
| 08K | 11/12/08 | 11/30/08 | 1/6/09 | 37 | $11.31 | $15 | 132.62% |
| 09D | 4/10/09 | 4/30/09 | 5/12/09 | 12 | $25.78 | $15 | 58.18% |
| 08G | 7/10/08 | 7/30/08 | 9/12/08 | 44 | $37.24 | $15 | 40.27% |
| 06I | 9/12/06 | 10/2/06 | 10/17/06 | 15 | $39.47 | $15 | 38% |
| 07A | 1/10/07 | 2/1/07 | 3/6/07 | 33 | $51.96 | $15 | 28.86% |

27. On one overdue payment in 2008, Defendant assessed Mr. Ciser a $15 late fee that was even more than the $11.31 overdue principal sum.  This late fee had an effective late fee percentage of 132.62%.  Of the five late fees Defendant assessed Mr. Ciser from 2006-2009, the average late fee percentage rate equals a whopping 59.59%.

28. The lowest late fee percentage Defendant charged Mr. Ciser was 28.86%.  This percentage is far higher than the 10% late fee that the New Jersey Supreme Court in MetLife cited to as an example of a "fixed percentage late fee involv[ing] unusually large percentages."  59 N.J. at 499.

29. Upon information and belief, Defendant Nestle Waters consistently charges its customers $15 late fees, and many of these late fees equate to percentages in excess of 50% of the outstanding amount owed.  For example, a Nestle Waters customer of Arrowhead Waters in California, another Nestle Waters' division, was assessed a $15 late fee on top of his $19.66 in monthly charges.  When the customer called to complain, the Company threatened to put him into collection if he didn't pay the entire amount owed, including the exorbitant late fee.

9

As the customer explained in his internet posting: "The late fee is 76% of the bill."

**(iv) Defendant Nestle Waters' Costs from An Overdue Payment Likely Do Not Exceed $1, and Come Nowhere Near the $15 the Company Charges Customers**

30. Upon information and belief, the actual costs incurred by Defendant Nestle Waters associated with late payments by customers consist of two elements:

      (i)     An interest cost reflecting the extra financing cost from the due date till the actual collection, and

      (ii)    An administrative cost reflecting the extra effort (if any) made by Nestle Waters to collect the late payment (e.g., mailing collection letters to past due customers, telephone calls).

31. Both cost elements to Defendant Nestle necessarily vary with the length of the collection period beyond the original due date.  If Defendant intends to use its late fees to cover actual monetary damages incurred, then the late fee should also vary based on that period.  The longer the period between the due date and the actual collection date, the higher are the costs associated with collecting the late payment.  Alternatively, if a fixed late fee is used, it must be based on a reasonable assessment of the anticipated costs the company incurs as a result of the late payments.

32. Defendant Nestle's late fees policy of a fixed $15 amount (up to $20) has no rational relationship to the actual (or anticipated) direct damages suffered by Nestle Waters.  The interest carrying cost to Defendant of Mr. Ciser's five late payments, which ranged from 12 days to 44 days overdue, caused the company a minimal loss - *calculated in cents, not dollars*.

33. Defendant's $15 late fee assessment to Mr. Ciser for his overdue payment of $51.96 made on

March 6, 2007 exemplifies the minimal finance cost Defendant incurred from Plaintiff's and other customers' late payments. As set forth in the late payment chart above, the due date for that payment was February 1, 2007, and thus Mr. Ciser was 33 days overdue. Upon information and belief, the only cost Nestle Waters incurred during these 33 days was the interest cost for 33 days. Professor Eli Bartov of NYU Stern Business School calculates that Nestle Waters' interest cost for this payment amounts to approximately 14 cents. This calculation is based on Nestle's own published carrying costs in 2007 as disclosed in the company's financial statements.[2]

34. Upon information and belief, there is also no evidence that Defendant Nestle Waters incurred any administrative costs in collecting this particular February 1, 2007 late payment. When Plaintiff Mr. Ciser missed the February 1 due date, upon information and belief the only step Nestle took to collect the payment was to include a message at the top of the next monthly bill asking its customer "Did you forget about us?" and reminding him that "past due accounts are subject to a late fee." Professor Bartov's preliminary analysis of this late payment finds that even if one allows for the cost of a collection letter (at approximately $1), the total financial cost to Nestle Waters from this one overdue payment is $1.14.

35. Upon information and belief, this example of the minimal costs Defendant incurred from one overdue payment is typical of the other costs incurred due to the other four overdue payments

---

[2] Page 56, footnote 18, of the 2007 Consolidated Financial Statements of the Nestlé Group reports that Nestle's interest rate (effective rate) on loans in US$ taken out by Nestlé Holdings, Inc., USA, is approximately 3% per year. The interest cost for 33 days is thus: $51.96 * 3\% * 33/365 = \$ 0.14$.
http://www.nestle.com/asset-library/Documents/Library/Documents/Financial_Statements/2007-Financial-Statements-EN.pdf.

from Mr. Ciser.   Defendant's borrowing costs and negligible incremental administrative collection efforts apply to all its customers who make overdue payments.   Thus, Plaintiff intends to prove that a typical assessed late fee of $15.00 is approximately 900% above the actual damage suffered by Nestle, and thus grossly excessive.

36. Although Defendant Nestle Waters' alternative late fee policy of charging 1.5% per month does vary over time, it too is nevertheless arbitrary and excessive given that the cost of borrowing for Nestle was in the range of 0.25 – 0.35 percent per month, well below the 1.5% per month stated late fee charge.   In addition, this alternative policy appears to have no impact on Plaintiff and the Class, since upon information and belief Defendant does not seem to have been applied it in practice.

37. The variable interest late fee charge is nonetheless instructive to demonstrate a further reason why Defendant's late fee costs bear no relationship to the company's costs.   On all its bills to Plaintiff and water delivery customers, Defendant applies a fluctuating Fuel Surcharge. Defendants' website states that the Fuel varies depending upon the monthly national U.S. average for diesel fuel reported to the U.S. Department of Energy.   Likewise, if Defendant truly wanted to recoup a true measure of its interest carrying costs, it would have varied its late fee so as to reflect the change in interest rates.   The Court can take judicial notice of the marked drop in interest rates from 2007 to present.   Indeed, upon information and belief, Defendant's borrowing costs dropped to approximately 1.75% in 2012.

### (v)  Nestle Waters Has the Highest Late Fee of Any Comparable Company

38. Defendant Nestle Waters' late fee is far beyond the customary late fee rate in the bottled

12

water industry or in similar delivery-type industries.  Investigation by Plaintiff's counsel could not find any bottled water delivery company that charged as much as the fixed $15 late fee charged by Nestle.  The following chart sets forth the available late fee rates of other comparable bottled water companies and delivery-type companies:

39. ***Bottled Water/Delivery Companies Late Fee Comparison Chart***

### Water Companies

| Company Name | Delivery Area | Days before Late Fee charged | Late Fee Charged |
|---|---|---|---|
| **Nestle Waters** | **Nationwide** | 30 days | **$15** |
| Twin Rocks Spring Water Service | Throughout New Jersey and Brooklyn | N/A | None |
| Belmar Spring Water | Northern New Jersey | 30 Days | $1 Finance Charge |
| Diamond Rock Spring Water | Northern New Jersey | unknown | 10% |
| Blue Mountain Natural Spring Water Company | Ocean, Monmouth, Middlesex counties | 35 Days | $10 |
| DS Waters of America | Nationwide | 50 Days | $10 <br><br> Maryland customers charged 1.5% |
| Water Guys | New Jersey, Pennsylvania, Delaware, and Maryland | 1 Month | $10 |

### Other New Jersey Delivery Companies

| Company Name | Delivery Area | Late Fee Charged |
|---|---|---|
| Suburban Propane | Headquartered in N.J. Nationwide delivery | 1.5% |
| Tullo Oil | Northern New Jersey | 2.0% |

### Other New Jersey/ New York Consumer Companies

| Company Name | Delivery Area | Late Fee Charged |
|---|---|---|
| Time Warner Cable | Nationwide | 1.5% |
| Verizon | Nationwide | If balance is over $5, late fee is greater of $5 or 1.5%.  If balance is less than $5, then late fee is 1.5%. |
| ConEd of New York | New York | 1.5% |
| AT&T | Nationwide | $5 |

40. As the Bottled Water/Delivery Company late charge comparison chart shows, the more usual

fixed late fee of other bottled water delivery companies is substantially lower than Nestle's, either zero, 1%, $10 or 10%. Plaintiff does not allege that the later $10 or 10% comparable rates are reasonable, rather they demonstrate again that Defendant Nestle Waters' late charge provision is grossly disproportionate by comparison.

41.  Plaintiff maintains that under either prong of the test to determine if a late fee is a penalty, Defendant Nestle Waters fails. Its $15 late fee bears no rational relationship to the relatively small interest/administrative costs the company incurs from late payments. Further, the late fee is abnormally higher than industry rates in the bottled water field or in comparable delivery industries.

**(vi)  Defendant's Billing Practices are Confusing and
       its Invoices are Unclear and Misleading**

42. Not only are Defendant's own late fee policies inconsistent and confusing, as described above in the section (ii) Late Fee Policies above, but both the terminology used on the bills themselves and late fee practices are also deceptively unclear.

43. For example, Nestle's invoices state that "[p]ayments received after the billing (INVOICE) date will appear on your next invoice."  Yet the very next sentence states that "past due invoices (not paid within 30 days of billing date) may be assessed a late fee."  But nowhere on the invoice is there anything called an "INVOICE" date.  Further, the invoice indicates a "PAY BY" date, but is that the date the late fee will be assessed?  Plaintiff maintains that the bills were not clear, and that he was unsure and confused by Defendant's billing when making payments, including payments that included late fee charges.

44. Further, Defendant often had a lag of a month or more before imposing the late fee on

Plaintiff's, and upon information and belief, the Class' invoices.  And when it did impose the fee, Defendant did not indicate to which overdue payment the late fee applied.  When Plaintiff made his payments, he was typically unable to ascertain to which payment the late fee applied.  This is the Second Amended Complaint, and only now, with the assistance of a noted business Professor, has Plaintiff and his counsel been able to ascertain which overdue payment the late fee applies.  Upon information and belief, there is still a question on at least one of the late fees set forth in the chart above in paragraph 26 as to which late fee applies to which overdue payment due to Defendant's complicated billing practices.

45. Plaintiff maintains that due to the confusing billing practices, he was thus mistaken when paying his bills, including the late payments.  Further, Mr. Ciser relied on Defendant's good faith, and had no reason to believe when he made his payments which included assessments for late charges in 2006-09 that the company's late charges were not reasonably related to Nestle's actual and anticipated costs attributed to late payment.  Ciser felt compelled to pay his entire bills, including the late fees.

## CLASS ACTION ALLEGATIONS

46. Plaintiff Mr. Ciser brings this action pursuant to Fed. R. Civ. P. 23 to recover damages on behalf of himself and two subclasses of Nestle Waters customers whom Defendant victimized and continues to victimize by charging and/or collecting unreasonably high late payment penalties. The action includes all such persons whom Defendant continues to so bill in the future.

47. Defendant Nestle Waters' excessive and unreasonable late fees constitute, *inter alia,* a breach of contract in New Jersey and all States where the Company does business, violate the New Jersey

Consumer Fraud Act, and also the common law of New Jersey and other states where Nestle

Waters transacts business.

48. Plaintiff seeks to represent the following two subclasses under Counts 1-3 whom Defendant

charged excessive late fees:

Late Fee Penalty Subclass 1:

*All Nestle Waters' customers in New Jersey who were assessed and/or paid a late fee of $15 or more, from August 2005 to the date of judgment.*

Late Fee Penalty Subclass 2:

*All Nestle Waters' customers in all States where the Company does business who were assessed and/or paid a late fee of $15 or more, from August 2005 to the date of judgment.*

49. This action is properly brought as a class action for the following reasons:

(a)  The class consists of thousands of persons and is so numerous that joinder of all

members, whether otherwise required or permitted, is impracticable.

(b)  There exist questions of law and fact common to the class which predominate

over any questions affecting only individual members including:

(1) whether the late fee Defendant Nestle Waters charges is unreasonable and a penalty and, therefore, unenforceable;

(2) whether Defendant Nestle Waters should be enjoined from continuing its unlawful practices, and

(3) whether Defendant Nestle Waters is liable to the Class and the measure of damages.

(c)  Plaintiff Mr. Ciser's claims are typical of the claims of the Class.  Like all class

members, Plaintiff was injured by Nestle Waters' imposition of draconian late fees.  In common

with all class members, Plaintiff was billed an exorbitant late charge per month despite the fact that

16

this amount is unrelated to the anticipated or actual harm Nestle Waters incurred from a customer's late payment, and/or is far in excess of industry standards.  Plaintiff has suffered the same kind of harm as other class members.

(d)  Plaintiff has hired counsel able and experienced in class action litigation and will fairly and adequately protect the interests of the class.

(e)  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Individual damages to any one class member may be relatively small, making the expense of individual litigation prohibitive or impractical for class members.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

**VIOLATION OF N.J.S.A. § 56:8-1, <u>ET SEQ.</u>,**
**NEW JERSEY CONSUMER FRAUD ACT**
**(LATE FEE PENALTY SUBCLASS 1 –NEW JERSEY CUSTOMERS)**

50. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

51. Defendant Nestle Waters North America, Inc. has engaged in an unconscionable commercial practice under the New Jersey Consumer Fraud Act.

52. Defendant unlawfully billed Plaintiff and the Class unreasonable and excessive late payment penalties, which penalties bear no reasonable relationship to the anticipated or actual harm sustained by Defendant from a customer's late payment on a Nestle Waters' invoice for bottled water and related services.

53. Defendant also unlawfully billed Plaintiff and the Class excessive and unreasonable late payment penalties that are far higher than the customary late fee charges in the bottled water

delivery industry.

54. Defendant committed an unconscionable, unlawful, deceptive, and unfair trade practice by charging its customers excessive late fees as a means of penalizing the customers for paying late rather than reimbursing defendant for its actual costs incurred as a result of receiving a late payment, or charging customers with rates customary in the industry.

55. As a result of Defendant Nestle Waters' unconscionable, unlawful, deceptive, and unfair trade practice, Plaintiff and other members of Subclass 1 have suffered injury and monetary damages in an amount to be determined at the trial of this action, and upon information and belief, in the tens of millions of dollars.

56. Pursuant to the New Jersey Consumer Fraud Act, this Court has the power to enjoin the continuation of Defendant's unlawful and unconscionable acts. Unless enjoined by this Court, Defendant will continue its practice of charging excessive late payment penalties to its customers.

## AS AND FOR A SECOND CAUSE OF ACTION

### VIOLATION OF COMMON LAW
### (LATE FEE PENALTY SUBCLASSES 1 & 2 – NEW JERSEY CUSTOMERS AND ALL CUSTOMERS IN OTHER STATES WHERE DEFENDANT DOES BUSINESS)

57. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

58. Defendant Nestle Waters North America Inc. has engaged in an unlawful scheme with respect to Plaintiff and the Class who it has billed unreasonable and excessive late payment penalties on invoices for bottled water deliveries and related services.

59. Defendant's late fee is in reality an excessive penalty that bears no reasonable relationship to the anticipated or actual harm incurred by Defendant from a customer's late monthly payment, and/or is grossly excessive when compared to late fees customarily charged by other bottled water delivery companies.

60. Defendant's conduct violates the common law of New Jersey and all other States where Defendant does business.

61. Based on Defendant's unlawful scheme to impose an unreasonable penalty for late monthly payments, Plaintiff and other members of the Late Fee Penalty Subclasses 1 & 2 have suffered injury and monetary damages in an amount to be determined at the trial of this action, and upon information and belief, in the tens of millions of dollars.

62. As a result of Defendant's violation of common law, this Court has the power to enjoin the continuation of Defendant's unlawful imposition of a penalty for untimely monthly payments. Unless enjoined by this Court, defendant will continue its unlawful scheme to the detriment of Plaintiff and the Class.

## AS AND FOR A THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT UNDER NEW JERSEY LAW
### (LATE FEE PENALTY SUBCLASSES 1 & 2– NEW JERSEY CUSTOMERS AND ALL CUSTOMERS IN OTHER STATES WHERE DEFENDANT DOES BUSINESS)

63. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

64. Because of the wrongful activities described above, including billing Plaintiff for excessive late fees, defendant Nestle Waters North America Inc. has received money belonging to the Plaintiff

and the Class.

65. By collecting exorbitant late fee penalties from its customers, Defendant has benefited from receipt of the excessive late fees, and under principles of equity and good conscience, Defendant should not be permitted to keep this money.

66. Defendant has reaped illegal profits and unjustly enriched itself at the expense of Plaintiff and the members of Subclasses 1 & 2.

67. As a result of Defendant's collection of these excessive late fees, Defendant must account to the Plaintiff and class members for such unjust enrichment and disgorge its unlawful profits.

68. By reason of the foregoing, Plaintiff and the Class have suffered injury and money damages in an amount to be determined at the trial of this action, and upon information and belief, in the tens of millions of dollars.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment:

A. declaring this action to be maintainable as a class action;

B. awarding compensatory damages to Plaintiff and the class members;

C. awarding treble damages pursuant to law;

D. enjoining Defendant from continuing to implement its unlawful and illegal trade practices and schemes;

E. awarding Plaintiff all costs and disbursements, including attorneys' fees, experts' fees, and other class action related expenses;

F. awarding pre-judgment and post-judgment interest to the class members on their damages;

G. awarding total damages in excess of $50,000,000; and

H.  granting such other and further relief as may be just and proper.

## **Jury Demand**

Plaintiff and the Class demand a trial by jury of all issues.

Dated:  Armonk, New York
        March 4, 2013

                                  _____/s/_____
                                  Steven L. Wittels (SW-8110)
                                  **LAW OFFICES OF STEVEN L. WITTELS, P.C.**
                                  18 Half Mile Road
                                  Armonk, New York 10504
                                  Telephone: (914) 319-9945
                                  Facsimile:  (914) 273-2563
                                  slw@wittelslaw.com

                                  *Counsel for Plaintiff and the Class*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via ECF this 4th day

of March, 2013 upon the following counsel of record:


**Jeffrey Garrod**
Orloff, Lowenback, Stifelman & Siegel, P.A.
101 Eisenhower Parkway, Suite 400
Roseland New Jersey 07068-1097
(973) 622-6200
jmg@olss.com

*Attorneys for Defendant*


_____/s/  Steven L Wittels_____
       Steven L. Wittels

22