# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GARY CISER, on behalf of himself and all others similarly situated,** | Civ. No. 2:11-05031 (WJM) |
| **Plaintiff,** | **OPINION** |
| v. | |
| **NESTLÉ WATERS NORTH AMERICA, INC.,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

For several years, Ciser Computer Consulting ("CCC") contracted with Defendant Nestlé Waters North America, Inc. ("Nestlé") for the delivery of bottled water. CCC's owner, Plaintiff Gary Ciser, paid the bills, which sometimes included late charges. Arguing that the late charges constituted unenforceable penalties under New Jersey law, Ciser brought the instant putative class action alleging violations of the New Jersey Consumer Fraud Act (the "NJCFA"), the common law of liquidated damages, and unjust enrichment. Nestlé moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. For the reasons discussed below, the Court will **GRANT** the motion.

## I.    FACTUAL BACKGROUND

Nestlé delivered bottled water to CCC, and Ciser paid the bills. Second Am. Compl. ¶ 15, ECF No. 20. On several occasions, Ciser did not make timely payments. As a consequence, Nestlé charged late fees of $15. *Id.* ¶ 20. With respect to the late fees, Ciser claims that Nestlé's invoices were confusing. *Id.* ¶¶ 42-45. He claims that he could not tell which month's bill went with which late fee. *Id.* ¶¶ 43-45. He further claims that his invoices were inconsistent with Nestlé's website. *Id.* ¶ 42. Nestlé's website stated that late fees would be "the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid." "[p]ast due invoices . . . may be assessed a late fees as allowed by law not to exceed $20 per month." *Id.* ¶ 21. The invoice stated that "[p]ast due invoices may be assessed a late fee as allowed by law not to exceed $20 per month. Additional third party

1

collection/attorney expenses may be assessed at a rate not to exceed 100% of the unpaid balance or the maximum allowed by law." *Id.* ¶ 22.

The Second Amended Complaint, which the Court refers to as the "SAC," identifies five occasions in which Ciser paid late fees ranging from roughly 30% to roughly 130% of the underlying bill:

| Monthly Charge | Invoice Date | Days Overdue | Late Fee | Late Fee As Percentage of Monthly Charge |
| --- | --- | --- | --- | --- |
| $ 11.31 | 11/12/08 | 37 | $ 15 | 132.62% |
| $ 25.78 | 4/10/09 | 12 | $ 15 | 58.18% |
| $ 37.24 | 7/10/08 | 44 | $ 15 | 40.27% |
| $ 39.47 | 9/12/06 | 15 | $ 15 | 38% |
| $ 51.96 | 1/10/07 | 33 | $ 15 | 28.86% |

*Id.* ¶ 26.

On information and belief, Ciser alleges that when a customer failed to pay its bill in a timely fashion, Nestlé would incur two types of costs. First, Nestlé would lose out on the interest it would have accumulated had it received timely payments. *Id.* ¶ 30. Second, Nestlé would incur administrative costs if it had to send collection letters or hire collection agencies. *Id.*

Ciser maintains that "Nestlé's late fees policy of a fixed $15 amount (up to $20) has no rational relationship to the actual (or anticipated) direct damages suffered by Nestlé Waters." *Id.* ¶ 32. In the SAC, Ciser focuses on his $51.96 bill from January 10, 2007. Ciser was 33 days late on this payment. *Id.* ¶ 26. Using the consolidated financial statements for Nestlé Group (as opposed to Defendant Nestlé Waters North America, Inc.), an NYU business school professor calculated that Nestlé lost out on 14 cents in interest because Ciser did not pay on time. *Id.* ¶ 33. And since Nestlé apparently did not call a collection service or send any additional notices to Ciser, Ciser maintains that Nestlé's administrative cost for the late payment was zero. *Id.* ¶ 34. Furthermore, Ciser alleges that if Nestlé had sent a collection letter, which costs roughly $1, Nestlé would have lost out on only $1.14. *Id.*

Ciser also claims that Nestlé's late fees were "far beyond the customary late fee rate in the bottled water industry." *Id.* ¶ 38. Ciser claims that Twin Rocks Spring Water Service does not charge a late fee for bottled water deliveries, that Belmar Spring Water charges a $1 late fee, that Diamond Rock Spring Water charges a 10% late fee, and that Blue Mountain Natural Spring Water Company, DS Waters of America, and Water Guys charge a $10 late fee. *Id.* ¶ 39.

## II. PROCEDURAL HISTORY

On August 31, 2011, CCC and Ciser filed an original three-count Complaint against Nestlé alleging violations of the NJCFA, the common law of liquidated damages,

2

and unjust enrichment. ECF No. 1. The original Complaint represented that Nestlé charged excessive late fees, and that Nestlé also breached its contract by charging customers during a grace period. Nestlé moved to dismiss. Before the Court could address the motion, CCC and Ciser filed an Amended Complaint. ECF Nos. 8-11. The Amended Complaint also asserted claims under the NJCFA, the common law of liquidated damages, and unjust enrichment. Unlike the original Complaint, the Amended Complaint pursued only the excessive late fee claims. The Amended Complaint did not pursue claims related to charges incurred during grace periods.

On December 16, 2011, Nestlé moved to dismiss the Amended Complaint. ECF No. 12. The Court granted the motion on January 31, 2013. ECF No. 21. The Court dismissed CCC's claims on standing grounds. *Ciser v. Nestlé Waters North America, Inc.*, No. 11-5031, 2013 WL 396139, at *2 (D.N.J. Jan. 31, 2013). The Court held that Ciser had standing, but the Court also held that Ciser's claims were conclusory. Specifically, the Court noted that Ciser did not plead facts suggesting that Nestlé's late fees were unreasonable. The Court explained: "Ciser says nothing about the 'anticipated or actual costs Nestlé Waters incurs as a result of a customer's untimely monthly payment. And he says nothing about rates charged by 'other bottled water and similar-type delivery companies in the nation.'" *Id.* at *3.

On March 5, 2013, Ciser filed the SAC. Like the Amended Complaint, the SAC asserts claims for excessive late fees under the NJCFA, the common law of liquidated damages, and unjust enrichment. On April 1, 2013, Nestlé filed the instant motion to dismiss the SAC.

### III. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## IV. DISCUSSION

The SAC contains three counts. Count I is a claim under the NJCFA. Count II is a claim under the common law of liquidated damages. Count III is a claim for unjust enrichment. Underlying all three counts is an allegation that Nestlé's late fees constituted unenforceable penalties under New Jersey law.

### A. Count I (NJCFA)

Count I is an NJCFA claim alleging an unconscionable commercial practice. Nestlé moves to dismiss Count I. For purposes of the instant motion, the Court will consider only two of Nestlé's arguments: (1) that Ciser's NJCFA claim is implausible; and (2) that Ciser has failed to allege an unconscionable commercial practice. The Court agrees with both arguments.

Under New Jersey law, "[a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Ciser*, 2013 WL 396139, at *3 (quoting *MetLife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484, 494 (1999)). Late fees are liquidated damages. *Metlife*, 159 N.J. at 505. Courts assess the reasonableness of late fees by considering "[the] intention of the parties, the actual damages sustained, and the bargaining power of the parties," as well as "common practice in a competitive industry." *Id.* at 495, 497. Courts also consider whether liquidated damages protect against harm that is "incapable or very difficult of accurate estimate." *Wasserman's Inc. v. Township of Middletown*, 137 N.J. 238, 250 (1994) (internal quotation and citation omitted). "[T]he greater the difficulty of estimating or proving damages, the more likely the [liquidated] damages will appear reasonable." *Id.* (internal quotation and citation omitted).

In deciding whether the SAC plausibly alleges unreasonableness, and therefore unenforceability, the Court looks to the persuasive analysis set forth in *Reed v. Zipcar, Inc.* ("*Zipcar*"), 883 F. Supp. 2d 329 (D. Mass. 2012), another late fee case decided at the motion to dismiss stage. In *Zipcar*, the defendant charged late fees starting at $50. *Id.* at 332. Competitors charged $25 or less. *Reed v. Zipcar* ("*Zipcar II*"), --- Fed. App'x ----, 2013 WL 3744090, at *1 (1st Cir. July 17, 2013). Like Ciser in the instant case, the plaintiff in *Zipcar* filed a state consumer fraud act claim, arguing that she paid late fees that were "'grossly disproportionate' to the expected harm caused by late returns." *Zipcar*, 883 F. Supp. 2d at 335.

The *Zipcar* court dismissed the consumer fraud claim on plausibility grounds. It began by noting that the plaintiff failed to allege that Zipcar could easily ascertain the costs associated with late returns. *Id.* The *Zipcar* court continued as follows:

> [Plaintiff] cannot show that the late fee is "grossly disproportionate" to the expected harm caused by late returns without coming up with a reasonable approximation of that harm. She does not allege, for example, that each late return costs Zipcar only $5 and, while her reference to the late fee policies of competing car-sharing companies is certainly relevant to her proportionality theory, it gets her only part of the way there. Zipcar's competitors may have any number of strategic reasons for charging lower late fees. As more recent market entrants, they might reduce prices across the board in an attempt to gain market share. Alternatively, they may choose to recoup their losses from late returns by charging a higher rental rate or by levying other fees and charges. Another possibility is that their fees do compensate them for late returns but, because of lower overhead costs, late returns cost them less than late returns cost Zipcar.

*Id.* at 335-36. Additionally, the *Zipcar* court recognized that "[e]ven if this Court were to take the average late fee charged by Zipcar's competitors as the measure of expected harm . . . it would be a stretch to characterize Zipcar's only slightly higher late fees as 'grossly disproportionate.'" *Id.* at 336. After the plaintiff's claims were dismissed, the plaintiff appealed, and the First Circuit affirmed in an unpublished decision written by retired Justice David Souter. *Zipcar II*, 2013 WL 3744090.

The instant case is similar to *Zipcar*. First, while Ciser alleges that Nestlé's competitors' charged lower late fees than Nestlé, that allegation gets Ciser "only part of the way" to stating a consumer fraud act claim. *Zipcar*, 883 F. Supp. 2d at 336. As *Zipcar* noted, there are many reasons a company might charge lower late fees. Just because a company charges higher late fees than competitors, it is far from clear that the company's late fees are unreasonable. Second, while Ciser's allegations about Nestlé's costs are not conclusory, they are also not plausible. Ciser maintains that Nestlé lost out on (at most) roughly $1 when his $51.96 payment was late by roughly one month. Ciser bases this $1 figure on information about the interest Nestlé Group (not Defendant Nestlé North America Waters, Inc.) receives on its money, and he also bases it on the estimated price of a collections letter. But Ciser apparently has no idea what Nestlé's actual costs were when customers paid late. And Ciser apparently has no idea whether the harm caused to Nestlé by late payments was difficult to estimate.

Furthermore, just as the $50 late fees in Zipcar were not "grossly disproportionate" when compared with $25 late fees charged by competitors, the Court cannot find that a $15 late fee is unreasonable when compared with the $10 fees charged by competitors. *Metlife* is not to the contrary. *Metlife* upheld a 5% late fee in a mortgage contract between sophisticated parties. *See Metlife*, 159 N.J. at 496-500. *Metlife* compared the 5% late fee with a 10% late fee, which it described as "unusually large." *Id.* at 499. But *Metlife* cautioned that its holding about the reasonableness of a 5% late fee "applies only to commercial loan transactions and does not address the issue of enforceability of liquidated damage clauses in consumer contracts or in residential mortgages." *Id.* at 500 n.2. While a 10% late fee might be unusually large in a

5

commercial loan transaction, the Court holds that in the context of the consumer contract in this case, a $15 late fee was not unreasonable, even if the late fee sometimes amounted to more than 100% of the underlying bill.

In the alternative, even if Ciser has plausibly pled that Nestlé's late fees were unreasonable, his NJCFA claim would still fail. "[T]o state a claim under the [NJCFA], a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App Div. 2003). "Unlawful conduct" includes something the NJCFA calls an "unconscionable commercial practice." N.J. Stat. Ann. § 56:8-2.

Because the NJCFA does not define "unconscionable commercial practice," the Supreme Court of New Jersey has asked lower courts to "pour content into the concept on a case-by-case basis." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 472 (1988) (internal quotation and citation omitted). Courts are to recognize that unconscionability is a "concept obviously designed to establish a broad business ethic." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994) (internal quotation and citation omitted). Unconscionability refers to "good faith, honesty in fact and observance of fair dealing." *Id.* (internal quotation and citation omitted). It should be "interpreted liberally so as to effectuate the public purpose of the CFA." *Assocs. Home Equity Servs., Inc. v. Troup*, 343 N.J. Super. 254, 278 (App. Div. 2001).

Generally, it is for a jury to decide whether something is an "unconscionable commercial practice" under the NJCFA. *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009). "Nonetheless, in recognition of the fact that the 'capacity to mislead . . . is the prime ingredient of all types of consumer fraud [under the CFA] . . . courts have dismissed CFA complaints for failure to state a claim where plaintiffs have failed to allege that the defendant engaged conduct that could be considered misleading within the meaning of the Act." *Id.* (internal citations omitted). While Ciser maintains that Nestlé's bills were confusing, and while Ciser maintains that there was an inconsistency between Nestlé's website and its invoices, it is a fact that Nestlé disclosed that it might charge $15 late fees. *See* SAC ¶ 21 (website provides that late fees would "not exceed $20 per month); *see id.* ¶ 22 (invoices provided that Nestlé would "assess[] a late fee as allowed by law not to exceed $20 per month). As such, Ciser cannot plausibly allege that Nestlé acted in a misleading fashion when it came to charging him $15 late fees.

The Court recognizes that two unpublished decisions, one from a court in this District and one from New Jersey Superior Court, have denied motions to dismiss unconscionable commercial practice claims based on excessive late fees. *See King's Choice Neckwear*, No. 7-275, 2007 WL 4554220, at *7 (D.N.J. Dec. 21, 2007); *New York Career Guidance Servs., Inc. v. Wells Fargo Fin. Leasing, Inc.*, No. BER-L-1705-03, 2005 WL 1252315, at *6 (N.J. Super. May 2, 2005). The Court respectfully disagrees with those cases, both of which failed to consider whether the late fees at issue were misleading. *See Hassler*, 644 F. Supp. 2d at 514.

6

Based on the facts pled in the SAC, it is clear that Nestlé did not hide its late charges from Ciser. Given that Nestlé's conduct was up-front, in good faith, and not in violation of a "broad business ethic," *Cox*, 138 N.J. at 18, the Court holds that Nestlé did not engage in an unconscionable commercial practice. Accordingly, Nestlé did not violate the NJCFA, and the Court will **DISMISS** Count I. As amendment would be futile, the dismissal shall operate **WITH PREJUDICE**. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (courts properly deny leave to amend on futility grounds).

### B. Counts II and III (Common Law of Liquidated Damages and Unjust Enrichment)

Count II is a claim under the common law of liquidated damages. Count III is a claim for unjust enrichment. Both claims rise or fall on whether Ciser has plausibly alleged that Nestlé's late fees were unreasonable. In the previous section, the Court held that Nestlé's late fees were not unreasonable. Accordingly, the Court will **DISMISS** Counts II and III. Because amendment would prove futile, the dismissals shall operate **WITH PREJUDICE**. *See id.*

### V. CONCLUSION

For the reasons stated above, Nestlé's motion to dismiss is **GRANTED**. Counts I-III are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 24, 2013**